Judge Marshall
delivered the Opinion of the Court.
This action of ejectment was commenced in 1831, on the demise of Chiles, claiming under the patent of William Hays, against the tenants of Jones, who claimed under the elder patent of Jeremiah Moore.
A judgment rendered in favor of the plaintiff, in 1832, was reversed by this Court, in 1834. A judgment rendered in favor of the defendants, after the return of the cause to the Circuit Court, was also reversed by this Court, in' 1836. And the cause having been a second time remanded, and a second verdict and judgment having passed in favor of the defendants, it is again here on the appeal of the plaintiff.
The opinions of this Court, on the two occasions referred to, are reported in 2 Dana, 25, and 4 Dana, 479, and exhibit a detailed statement of the facts then appearing, and of the principles then settled.
Pltf. in ejectm’t claiming under a junior patent , mu3t show that deft, is estopped to resist his demand of the possession, or that the right of entry-under the elder patent had been tolled by a previous adverse possession of20yrs. which inured to the benefit of the pltf. and that his right of entry had not been lost by a like lapse of time.
A conveyance to a grantee who, in person or by his tenant or ven dee, was in possession of the land conveyed, when the deed was made, is not champertous under the act of’86; nor will the statute apply to a deed made to car ry into effect an executory contract made before the act passed.
As Chiles claims under the junior patent, he cannot recover but on one or both of these grounds: viz. (1.) that the defendants are estopped to resist his demand of the possession; (2.) that the right of entry under Moore’s patent had been tolled by a previous possession of twenty years, adverse to it, which inured to the' benefit of Chiles, and which had not been at an end so long as to bar the right of entry founded on it.
He relies upon each of these grounds as applicable to different portions of the land in contest; of which the possession of one tenement, known as Mayberry’s, had been delivered in 1802 or 1803, by William Bridges, under whom, as a purchaser from Hays, by executory contract, it had been settled, to the agent of Withers Smith, claiming under the elder patent, and from whom the defendants derive title. The possession of the residue of the land sued for, was acquired by the defendants, under two judgments in ejectment in favor of Hardage Smith, obtained in actions of ejectment commenced in 1814.— And the whole of the land in contest is included in the boundaries of three hundred thirty three and a third acres allotted and conveyed, by metes and bounds, to Withers Smith, in 1794, as his one sixth of the two thousand acres patented to Moore; and all, or nearly.all, of it is within the boundary of one hundred sixty six and two thirds acres, part of W. Smith’s lot aforesaid, which was conveyed by his heirs to Hardage Smith, who conveyed to Jones.
Whether these conveyances, or others on which they are in part founded, wrere, or were not, operative to pass the title under Moore’s patent, as they purport to do— that patent is a sufficient protection to the defendants, unless it has been rendered unavailing to them in one of the modes already referred to; in which case, the most regular derivation of title from that patent could do them no good.
We are of opinion, however, that the deed of February, 1794, from J. Moore to James French, conveying one undivided third part of the two thousand acres patented to Moore, cannot be pronounced champertoüs; because French, claiming one third by executory con *530 tract with Moore, had previously put Hancock in possession, and being in possession by Hancock, before and at the date of the deed, the conveyance to him was not prohibited, but expressly allowed, by the act of 1786, (1 Stat. Law, 284;) and because, moreover, it is to be presumed, from the ground and consideration of the written contract, in pursuance of which the conveyance was made, that it was entered into prior to the enactment of the statute; and therefore, the deed should not 'be considered as champertous.
A patty holding ajmioípatontef surrendered the cla]mingntunder the elder patent, and the latter (or those claiming under Him) had retained it, undis turbed, 28years: after such length of time, a jury should presume that there was a transfer of posses sion with the assent of the holder of the junior patent; and, as the presumption is that the party deriving title from the grantee of the • elder patent, entered and held under that title, those claiming under him, may , rely upon a possession of20yrs.-as a bar to any claim under the., junior title.
*530 The question as to the operativeness of this deed was not, for the reasons-álready given, essential to the determination of the case in the Court below; and has only been noticed 'here because the refusal of the Circuit Court to instruct the jury that it was void'unless the grantor had been one year in possession of the land at its date, is assigned for error by the appellant. The Court did not err in refusing'the instruction as asked.
The jury, on the last trial, having found a verdict for the defendants, it is manifest, from what has already been said, 'that, if the defendants were under no estop-pel as to the Mayberry tenement, and if, from the evidence, the jury were not bound to find that there had 'been twenty years continued possession adverse to the patent of Moore, and under that of Hays, before the commencement of the ejectment suits under which the defendants acquired possession of the other tenements, the verdict and judgment thereon must be sustained— unless the Court misdirected the jury in some point having a material bearing upon the verdict.
We are to enquire, then, first — whether the evidence -authorized the verdict; and, second — whether the Court misdirected the jury in any material point. And this ¡enquiry will be made, first — with regard to the Mayber-ry tenement; and, second — with regard to the other portions of the land in contest.
-First — as to the Mayberry tenement. That tenement 'having been delivered, in 1802 or 1803, by Bridges, the purchaser from Hays, to the agent of Smith, who claim-e(^ un^er Moore’s patent, and having been held by Smith and those claiming under him for twenty eight or nine *531 years, and until the commencement of this ejectment, without interruption or question by any one claiming under the title of Hays — the jury should have presumed, that the transfer of possession was made with the assent of Hays. And whether Smith should be considered as a purchaser from Bridges to the extent of the possession so acquired, or as having acquired the possession in virtue of his claim under Moore’s patent, and in acknowledgment of the superiority of that title, as it is to be presumed that he and those deriving title from him held and claimed the land under the superior title of Moore, and not under that of Hays; and as, moreover, there is no reason to doubt, upon the evidence in this record, that Bridges had paid Hays for the land before he delivered the possession to Smith’s agent, the claimants under Smith had, in either event, a right to rely .upon their twenty eight years’ possession as a bar to any claim of Hays, or his subsequent alienee.
It is true that, according to the proof in this record, Bridges appears never to have received a conveyance of the title of Hays; and this circumstance might possibly repel the presumption that Smith, as a purchaser from Bridges, had received a conveyance of Hays’ title to so much of Bridges’ purchase as was tranferrad to him. But as the only rational inference from the facts, is that Smith and those who derived the possession, under him, claimed the land under the patent of Moore, their possession so claimed,, even for. twenty years,, was not merely a presumptive, but an- absolute bar, to the right of entry of Hays or his alienee, though the possession were acquired in the first instance under such circumstances as precluded them from questioning the right of Hays at any time within the twenty years. Sebastian vs. Wheeler &c. 4 Dana, 436; Ogden vs. Walker’s Heirs, ib. 421; Chambers vs. Pleak, ib. 431; Willison vs. Watkins, 3 Peters.
The tenth instruction given on motion of the defendants, and which applies to no other part of the case, is in substantial accordance with these views.
Facts, as to the entries of several the boundaries of Ilays’ patent,
As to the residue of the land — it appears, that the defendants acquired the possession of all of it, except what may be designated as the Foster tenement, under a judgment in an action of ejectment is the name of Smith vs. Conley, commenced on the 18th of February, 1814; and that they acquired posssession of the Foster tenement under a judgment m a similar action, commenced against Foster, on the 13th day of October, 1814. It follows that, as to the land acquired under the first of these judgments, the plaintiff had no right of entry at the commencement of this suit, except so far as he has shown an uninterrupted possession under the title of Hays, for twenty years preceding the 18th day of February, 1814; and as to the Foster tenement, recovered in the second action, he has no right of entry except •in consequence of, and to the extent of, a similar possession prior to the 13th day of October, 1814. The Foster tenement seems to embrace so much of Smith’s one hundred and sixty six and two thirds acres as interferes with what is called Steen’s fifty acres, and Cook’s two hundred and ten acres, on which Steen and Cook entered as early as the fall or winter of 1793, claiming by execu-tory contracts of purchase from Hays. The land recovered in the first action, of Smith against Conley, embraces the interference of Smith’s one hundred and sixty six and two thirds acres with Conley’s one hundred and eighteen and three fourths acres, on which he entered in the fall or winter of 1793, and with Bridges’ six hundred acres, except that part which belonged to the Mayberry tenement, and including McQueen’s or Berry’s sixty acres, which was a part of Bridges’ six hundred acres.
Bridges did not enter upon his six hundred acres until the summer or fall of 1794: McQueen is stated by two witnesses, to have entered under and after Bridges; a 'tl^ird witness states that he entered in 1793, and raised a crop of corn in that year. Berry entered under and after McQueen. And although Conley entered on his one hundred and eighteen and three fourths acres in the winter of 1793-4, his entry was outside of Moore’s patent boundary, where he built his cabin, and there is no proof *533 that he had any enclosure, or had commenced any improvement, within the interference prior to the 18th of February, 1794. The jury had at least a right to find from the evidence, that he had not. And as the cutting of logs for his cabin promiscuously on each side of the line, did not give him such possession, within the elder patent, as would avail after the lapse of twenty years, to bar a legal right of entry, the jury had unquestionably a right to find from the evidence, that there was not, prior to the 18th of February, 1794, any possession under the claim of Hays, or adverse to that of Moore, commencing by the entry of Conley, Bridges, McQueen or Berry, within that part of the land recovered by Smith’s first action of ejectment.
to\Te extent of the en-^onsTthe'pr§yi-When an entry has been made upon a tract of land, to take possession of the whole, under a patent or deed, an entry by another, under a junior grant, will not give him a possession be-
Nor does the plaintiff’s claim to that part of the land derive any aid from the entry of Cook, in the winter of 1793-4, because he entered claiming to a specific boundary which did not include any part of that land, and because, moreover, the circumstances relating to his ea-try and improvement being substantially the same as those already stated in regard to Conley’s possession, he gained no possession within the boundary of Moore’s patent, prior to the 18th of February, 1814.
But it is contended, that Steen, who entered within the interference in the latter part of the year 1793, having entered without any specific designation of boundary or quantity less than the entire quantity of unsold land within the survey of Hays, gained a possession coextensive with Hays’ boundary; which, being continued by Bridges, who entered, in 1794, by specific boundary in eluding Steen’s improvement interruption until the commencement of Smith’s action of ejectment, in 1814, tolled the right of entry under Moore’s patent, as to all the land recovered by Smith within the boundary of Bridges’ six hundred acres , , . .... . , and being held without
Without examining into the evidence of the facts( med in this proposition, and supposing them, for the sal the argument, to be true in this case, still the conseqi would not follow if, at the time of Steen’s entr; elder patentee, or those claiming under him, had p sion to the extent of his patent. In that case, the e: *534 ofSteen under the junior claim of Hays — whatever might have been the intent with which it was made — did not divest the previous possession under the elder patent, beyond the extent of his actual enclosure — though such previous possession were taken, under Moore’s patent, outside of the boundary of Hays. Shrieve vs. Summers, 1 Dana, 239; Moss &c. vs. Currie &c. 1 Dana, 266. And as it seems entirely improbable from the proof, that he had any enclosure or improvement within any part of the three hundred and thirty three and one third acres conveyed to Smith, prior to the 18th of February, 1814, it is manifest that the plaintiff could derive no aid from Steen’s entry, in 1793, outside of the land in dispute, if there was then a subsisting possession under the elder patent, coextensive with its boundaries. The same fact, if there had been no other reason, would have prevented the constructive possession of Conley and Cook, who entered outside of Moore’s patent, from being extended to any part of the land within its boundary. And so long as such fact continued, it also limited the constructive effect of any arid every other entry, made under the claim of Hays, but within the boundary of Moore, to the actual close of the person making the entry. So that if there were such previous possession, and if it continued until withiri twenty years prior to the commencement of Smith’s actions in ejectment, in 1814, Chiles would not be entitled to recover in consequence of a subsequent entry and possession under Hays, beyond the extent of the actual enclosures made under Hays, as they existed at a date twenty years previous to the commencement of the action by -which they were respectively recovered by Smith.
One of three tenants in common sold his share on condition that, in a division of the land, he should obtain the northern end; and upon that end, the purchaser settled, without any designated boundary, other than that of the whole tract. But, upon the division, he failed to obtain that end, by consent, as he expected ; another portion was allotted to him, & the purchaser , disappointed, left the land: as to the possession so taken by the pur chaser, held, that the effect was the same as tho’ it had been taken by the vendor himself, and an entry by him, though upon one end of the tract, in the expectation that that end would be allotted to him , would have given him a possession of the whole, inuring to the common benefit of himself and co-tenants ; which would have had the effect of preventing any acquisition of possession by an entry under a juni- or grant, beyond the actual enclosure of the party who made it.— But query (see p. 539,) whether thedivision,when made, had the effect of limiting the possession to the allotment on which the entry had been previously made, & of withdrawing it from the residue.
*534 Several instructions given by the Court, were based upon the hypothesis, that the jury might find such a previous possession of Moore’s patent as has been referred to. And one of the most important questions in the case, is whether there w.as evidence sufficient to authorize the finding of that fact. There is no doubt, upon the evidence, that possession was taken under Moore’s patent, outside of the boundary of Hays, as early as the spring (probably April) 1793, by Hancock, who raised *535 a crop that year and the next. And even if the jury had believed, contrary to the weight of evidence, that McQueen entered under Hays, in 1793, and raised a crop that year, they would have been justified in finding that Hancock had entered first. As to this point there seems to be little if any dispute. The more serious question is as to the extent of the possession acquired by Hancock’s entry and occupancy. And it arises on the following facts:—
James French being, as before stated, entitled by contract with Moore, to one undivided third part of the two thousand acres, made an arrangement with Hancock, by which the latter agreed to take, in discharge of certain obligations of French to him, one third.of the two thousand acres, on the lower or northern end of the tract, provided the other parties interested in the patent should agree that French’s third should belaid off there: a contingency which French supposed to be probable, as he thought the lower or northern part of the tract to be inferior in quality to the rest. Under this arrangement, and subject to the contingency referred to, Hancock, afterwards, in April, 1793, entered upon the lower or northern part of the tract, without any designation of boundary other than the lines of the two thousand acres, and before there had been any agreement among the owners as to the mode or principles of a division. He also put a man by the name of Anderson in possession near him. On the 15th day of September, 1794, French and the other parties interested made a division by metes and bounds; and the other parties not being willing that French should have the lower third part; the matter was decided by lot, and the middle third part was drawn by French, and a deed of partition made accordingly. This put an end to the arrangement with Hancock, who may be presumed to have left the land shortly afterwards.
These facts, which the jury had a right to find, and •which are substantially proved, without contradiction, have been stated in detail, because the particular circumstances have been relied on as distinguishing this case from an ordinary entry by one tenant in common upon the land held by the common title, or an entry by a pur *536 chaser under an executory contract, but without specific boundary, upon the tract of his vendor of which he has purchased only a part. We do not, however, perceive any ground for distinguishing the case as it occurred from what it would have been if French himself, claiming an undivided third part of the patent, either by bond or deed, had done the same acts in entering upon and improving the land which Hancock did, declaring at the same time, that it was his desire and expectation that the third part within which he entered would be alloted to him by his co-tenants, and that under that expectation, he would improve and build upon it. And we do not perceive in these circumstances, any thing which should have the effect of restricting the possession so taken, either to one specific portion of the land, or to the exclusive benefit of the tenant who makes the entry. Certainly, the hope or expectation or intention of making the part upon which he enters his own exclusive property at a future time, when at the very time of making the entry he acknowledges the right of his co-tenants in the identical land on which he enters, and in the possession which he is about to take, cannot be a sufficient ground for such a restriction. Prima facie, the entry and possession of one tenant in common inures to the benefit of all and to the support of the common title; because, in the absence of all proof, the law presumes that he enters as tenant in.common, that is according to his actual title and interest, and therefore, considers him as acting for all. S. fortiori, when he enters expressly acknowledging the rights of his co-tenants, or when he puts another in possession in express subordination to those rights, he must be considered as acting for all, and all must derive a common benefit from his act.
The arrangement between French and Hancock related, it is true, to a particular portion of the land, though it was not designated by a marked boundary. But this arrangement was made dependent on the consent of the co-tenants. French did not claim to own or to sell the lower third part of the tract, independently or exclusively of his co-tenants, nor did Hancock claim to have so bought it. French claimed an undivided in *537 terest of one third of the whole tract, merely as tenant in common. He did not claim one third of the land as sole tenant. And Hancock’s entry and possession under him, without any actual interest of his own, or any designation of boundary, must be considered as the entry and possession of a tenant in common as such, and must, therefore, have inured to the common benefit, and have given a constructive possession to all, to the same extent as if all had entered. Which, there being no adverse possession within Moore’s patent boundary, extended to all of the land within it.
If there was any error in the instructions of the Circuit Court on this part of the subject, it was in those given on motion of the plaintiff, which assumed that the jury might find that French settled Hancock on.the land with the intent that he should take possession of six hundred and sixty six and two thirds acres in the northern part, and of that alone, and that Hancock did settle on that part, with intent to take and hold possession of that alone, and informed them that, if they found the facts to be so, the possession taken by Hancock, did not extend beyond the six hundred and sixty six and two thirds acres on the lower or northern line, although there was then no marked boundary.
If French settled Hancock on the land, although it may be true that neither of them intended or expected that Hancock should make any enclosure or improvement outside of what might be supposed to be the lower or northern third part of the tract, the facts do not authorize the conclusion that French had any other intention than to take possession as a tenant in common having an undivided interest of one third of the whole tract. And the law gives effect to the possession taken under his authority, from a consideration of his intention and his relations, and not from a consideration of the intention of the person by whose agency the possession is taken. A man may gain the same possession by putting his slave upon his land, as by entering upon it himself. Our doubt, therefore, is, not whether the jury might'properly'have found that a possession was gained by Hancock’s entry coextensive with Moore’s boundary, but *538 whether they were not bound to find that such a possession was in fact gained. A contrary construction. of the facts and the law arising on them would have produced this singular consequence, that French, under whom, claiming as a tenant in common, the possession had been actually taken, having received not the northern, but the the middle third, in the division subsequently made, would have derived no benefit as to his own share of the land from the possession which he himself had taken.
'Facts, -as to the ■ possession of the “ Foster tenement,” and conclusion that,when this suit was bro’t the pltf. had no right of entry upon the land in ■contest, by vir- ' tue of any former possession of ¿that tenement.
It is only necessary to add, on this branch of the case, that as Hancock was in possession at the date of Steen’s entry, in the fall or winter of 1793-4, and until after the 15th of September, 1794, and as Steen made no entry or enclosure within any part of the land in dispute, prior to the 18th of February, 1794, there does not appear to have been, on or before the last named day, any possession under Hays, of that part of the land which was recovered in the action of ejectment of Smith against Conley; and as to that portion of the land in contest, the verdict for the defendant is sustained by the evidence.
The remaining questions of fact relate to the possession of that part of the land which has-been called the Foster tenement, which was recovered by Smith’s action of ejectment, commenced on the 13th of October, 1814; and which seems to embrace a small interference with Cook’s two hundred and ten acres, and a portion of Steen’s fifty acres, which was also included in the survey of Bridges, but not in the sixty acres of McQueen.
In relation to this portion of the land, it is obvious •that, assuming the possession taken by Hancock, to have been prior to the entry of Cook, Steen or Bridges, and to any other entry which could otherwise have gained a possession of this part under Hays, it repelled, during its continuance up to the 15th of September, 1794, the ■constructive effect of any such entry, and limited the possession gained thereby to the actual close of the par.ty. And Smith’s three hundred and thirty three and one third acres, which includes the whole of the land in contest, having been allotted and conveyed to him by metes and bounds, on the 15th of September, 1794, no subsisting possession, or subsequent entry, outside of those *539 bounds, could have been extended by construction across Smith’s lines, so'as to affect the right of entry, on that part of the land, under Moore’s elder patent, whether that right of entry was or was not transferred to Smith, as we concieve it to have been, by the deed of partition of September, 1794. There is no proof conducing to show, that any improvement or enclosure had been made with-, in that portion of Smith’s lot which is the immediate subject of enquiry, as early as the 13th of October, 1794.. Nor does it appear that there was, prior to that day, any enclosure within any part of Smith’s lot, except those of McQueen and Berry, which being made and held under McQueen’s claim of sixty acres, by metes and bounds, did not gain any possession beyond those metes,. and therefore did not affect the question as to the"right, of entry upon the land outside of McQueen’s boundary,., even if, for reasons before given, the possession of McQueen and Berry had not been limited to their actual. enclosures.
We are of opinion, therefoi’e, that the plaintiff showed*, no posssesion of the Foster tenement commencing as eai’ly as the 13th of October, 1754, and of course no possession of twenty years ■ prior to the commencement of the action in which that tenement was recovered, and. no right of entry upon it, under the title of Hays, at.the commencement of this suit.1,
The questions, whether the division of. Moore’s two. thousand, acres, by metes and bounds, in. September,.. 1794, had. the effect of limiting the constructive possession gained by Hancock’s-entry-to the boundaries of the lot or lots within which his enclosure was situated, and. whether, if this were the case, there having been no actual entry on Smith’s lot by him or others under Moore’s ■ patent, prior to the 13th of October,.1794, the possession, held under Hays, within its bounds, was constructively extended as the possession under Moore’s patent was withdrawn, do not arise in any part of this case; because, as to the Foster tenement, there was, as already shown, no possession under Hays, which could, if the affirmative of these questions were admitted, have ex *540 tended to that; and as to the residue of the land in contest, (except the Mayberry tenement,) the possession of Hancock was continued for more than six months within the pei’iod of twenty years before the commencement of Smith’s first action, by which it was recovered.
Conclusion upon that'the* verdict was not contrary with^the'whole evidence; and the júdg’t should not be cause for a fourth of^he^tecisiong of the court below, m giving or tions, were tech-nioally errone-
A pltf. in eject. ™natitiederived from a patent not der°wldclihí adversary holds— adverseWposs¿1sion of 20 years within20yrsiof the commencement of the action altho there may have been a previous possession under the elder grant.
Upon the whole case, there seems to be no discrepan-*n the testimony, except as to the time when McQneen and Berry entered, and this discrepancy exists *n the plaintiff’s own testimony. If, as stated by one of the' plaintiff’s witnesses, McQueen entered in 1793, and he and Berry made a crop in that year, within McQueen’s sixty acres, then the plaintiff might have had a right to recover the land actually enclosed by them, P1'*01'to the 18th of February, 1794, on the ground of a possession for twenty years prior to the commencement 0f Smith’s first action of ejectment. But if, as proved by two of the plaintiff’s witnesses, McQueen did not en|;er until 1794, after the purchase by Bridges from Hays, then the plaintiff had no right to recover a foot of the land in contest. And as the jury have found according to the weight of the evidence on this point, and according to the undisputed tenor of the facts upon all other points, and as their verdict is accordant with the law arising on the whole case, we are riot disposed to set it aside, and send the case back for a fourth trial, on any technical objection to the opinions of the Circuit Court, in giving and refusing instructions.
There was but one instruction given which, even ab-stractty considered, is materially incorrect. That was the ninth which seems to imply that the possession under the Hays, must have been elder than that under the patent of Moore to authorize a verdict for the plaintiff, when, on well settled principles, an actual adverse possession of twenty years, though commencing after the possession under Moore’s patent, would have been sufficient. But if the effect of the error in this in- . , , : T struction, was not entirely cured by other instructions which expressly declared the plaintiff’s right to recover , ° « there had been twenty years adverse possession, and to tbe extent of such possession, and conceding also, *541 that if the question as to such adverse possession prior to the commencement of Smith’s actions of ejectment were doubtful, this error would be deemed a sufficient ground of reversal, still, as the evidence on that question, was not doubtful, but greatly preponderated in favor of the verdict as found, we cannot suppose that the jury were misled by the instruction in question, and will not upon the mere possibility that they might have found against the weight of the evidence if this instruction had not been given, set aside a verdict which corresponds with the evidence and the law, and therefore, with the apparent justice of the case.
The eleventh instruction applies only to the Foster tenement and the Mayberry tenement; and looking to the evidence in relation to those tenements, it is unnecessary to say more in regard to the eleventh instruction than that.it was harmless.
Wherefore, there being no error in the record and proceedings, prejudicial to the appellant, the judgment is affirmed.