[Filed June 25, 1885.]

# PRISCILLA PARKER *v.* D. W. METZGER AND EMMA METZGER.

TITLE—ADVERSE POSSESSION—STATUTE OF LIMITATIONS.—Adverse possession of real estate for the period prescribed by the Statute of Limitations vests a perfect title in the possessor as against the former holder of the title and all the world, and he is entitled to all remedies which are incident to possession under written titles.

MULTNOMAH COUNTY.   Defendants appeal.   Affirmed.

The facts are stated in the opinion.·

*O. F. Paxton,* for Appellants.

*W. T. Burney,* for Respondent.

LORD, J.—The substance of the facts as found by the referee, and out of which the main contention arises, are: That on or prior to the 15th day of November, 1865, the plaintiff owned and was in possession of, as a part of her portion of the donation land claim of Davis Duvall and wife, the N. E. quarter of the N. E. quarter of section 15, township 1 S., range 3 E., in Multnomah County, Oregon; that upon said date the plaintiff, then Priscilla Duvall, joined with her husband, Davis Duvall, in a conveyance of land in which said forty-acre tract, the land in dispute, together with other property, was deeded to one Tomlinson; that the said forty-acre tract was included in said conveyance by mistake of both parties, the intention of all parties being to convey only the land of Davis Duvall, and that the plaintiff joined in said deed solely for the purpose of barring her dower, the intention being to further vest in said Tomlinson the W. half of the N. W. quarter of said N. E. quarter section, which he had purchased, and by similar mistake the said twenty-acre tract was not so conveyed; that no consideration was paid plaintiff or her said husband for said forty-acre tract deeded to Tomlinson, and that said twenty-acre tract was occupied by Tomlinson thereafter, and has not been in the occupation of plaintiff since said conveyance, and the said mistake was

not discovered by plaintiff, or anyone, until about the year 1874; that in July, 1874, the said Tomlinson died, leaving minor children surviving him, none of whom are of age; that on the 9th day of May, 1882, a guardian's deed was made to the defendant Metzger of said premises, under a sale previously made by the guardian of said minors, under an order of the county court, and the said guardian's deed was placed upon record before the commencement of this suit; that the said defendant Metzger had actual notice of the claim of plaintiff to said land before purchasing at said guardian's sale, and that the plaintiff is the owner as to said defendants of said real estate, and that the defendants have no right, title, or interest therein or thereto; that from and after said conveyance to said Tomlinson the plaintiff and her husband continued to cultivate said portion of said forty-acre tract lying within her inclosure, and the plaintiff has continued in the occupation and cultivation thereof up to the present time, and has cut timber and sold timber from said forty-acre tract within four or five years after said conveyance was made; that all of said acts of ownership of said land by the plaintiff were done under the claim of ownership of all of said land adversely to all persons, and the said acts and the claim of ownership were open and notorious, and were well known to said Tomlinson during his lifetime.

These facts as found, we think, are substantially sustained by the evidence. The suit is based upon two grounds, either of which, it is contended, entitles the plaintiff to the relief prayed for. Upon the first ground the plaintiff claims the legal title to the forty-acre tract of land in dispute by reason of adverse possession under a claim of title, and insists that being in possession of the premises, and invested with the title by operation of the Statute of Limitations, and the defendants claiming some interest therein adverse to her, she is entitled to the relief sought. On the other hand, it is contended that the Statute of Limitations does not vest the title in the person who holds the lands under it; that it affects the remedy only, and not the right; and that plaintiff, not having the legal title, has no standing ground upon which she can maintain this suit. In

support of this position we are referred to *Goodwin* v. *Morris*, 9 Oreg. 322, and *Myer* v. *Beal*, 5 Oreg. 130. But neither of these cases were actions or suits concerning title to real property; and as to actions of tort or upon contract, as decided in those cases, the law seems to be that the statute bars the remedy only. But the question here directly is, whether our statute bars the right, and vests the title in the party who brings himself within its provisions. If it does, then it is conceded that the suit may be maintained. This question has been very ably and thoroughly examined and answered by Mr. Justice Sawyer in *Arrington* v. *Liscom*, 34 Cal. 380. In that case the suit was, as here, to quiet title; and after an elaborate review of the authorities, the result reached was that adverse possession for the full period limited by the statute confers title, and that it is such title as entitles the holder to all the remedies to quiet his possession that are incident to possession under written titles. In the course of his opinion he said: "Some recent statutes provide in express terms that adverse possession for the time prescribed shall extinguish adverse titles and vest the possessor with the fee. Ours contains no such express provision; but is not that the effect of our statute when properly construed? Angell says, in the language of Mr. Chancellor Harper, in *Drayton* v. *Marshall*, 1 Rice Eq. 385: 'The belief is that no case can be put in which a private individual knows that another person claims and is in the actual enjoyment of land which belongs to him, and neglects to prosecute his rights at law, when there is nothing to prevent his doing so, that he will not be barred by the Statute of Limitations.' (Ang. Lim. 5th ed. 374, § 381.) And Angell further says: 'It is also unquestionable that where the land has been held, under a claim to the fee, for the time prescribed by the statute, and an entry is made by the party who has the written title, such party may be dispossessed by an ejectment brought by him who has so held and claimed.' This was so held in *Jackson* v. *Oltz*, 8 Wend. 440. The lessor of the plaintiff had been in possession for the period prescribed by the statute, claiming title under a patent. Defendants afterwards entered and held under a title which had

been judicially determined to be valid. The action was brought by the plaintiffs, relying on the title acquired by adverse possession, against the defendants holding such paper title, and a recovery had. The court say: 'If the possession was adverse, and had been so for more than twenty years, as it had in this case, then the possession ripened into a title, and the plaintiff must recover against the defendant, though the paper title to the fifty acres is, in reality, not in him.'

"The same principle is recognized in *Jackson* v. *Dieffendorf*, 3 Johns. 269. And in *Jackson* v. *Rightmyre*, 16 Johns. 314, Mr. Chancellor Kent says that showing a possession of thirty-eight years under a claim of right 'was showing an absolute right of possession sufficient to toll an entry.'

"Our Statute of Limitations relating to real estate is copied from the statute of New York, with but slight verbal changes, and we are not aware of any provision in the statute of New York which would affect the construction on this point. In *Bradstreet* v. *Huntington*, 5 Peters, 438, Mr. Justice Johnson says 'that an adverse possession, when it actually exists, may be set up against any title whatsoever, either *to make out a title* under the act of limitations, or to show the nullity of a conveyance executed by one out of possession. On the first two of the propositions there can be no doubt, and none has been expressed.' And in *Drayton* v. *Marshall, supra,* Mr. Chancellor Harper says: 'The time then required to *mature a title* by the Statute of Limitations had run out more than five times before the filing of this bill.' And again: 'But if, by the statute, the defendants have acquired a title to the fee, they can of course have no right of redemption against themselves. This must be merged or extinguished in the fee.' These remarks all go upon the idea that adverse possession for the time prescribed confers upon the possessor some interest, some positive right; that it affords him something more than a shield; in short, invests him with title. In *LeRoy* v. *Rogers*, 30 Cal. 229, we said: "Rogers' title, *thus acquired by adverse possession*, the claimants under the patent having a right of action and being under no disability, could not be impaired by an entry by them, claiming

under the patent, unless made in pursuance of a judgment to which Rogers was a party or privy.' So in *Taylor* v. *Horde,* 1 Burr. 119, Lord Mansfield said : ' Twenty years' adverse possession is a *positive title* to the defendant. It is not a *bar to the action or remedy only, but it takes away the right of possession.'* To the same effect are *Stokes* v. *Berry,* 2 Salk. 421, and *Pederick* v. *Searle,* 5 Serg. & R. 239.

"In *Leffingwell* v. *Warren,* 2 Black, 605, the Supreme Court of the United States says : ' The lapse of time limited by such statutes *not only bars the remedy, but it extinguishes the right, and vests a perfect title in the adverse holder.'* So in *School District* v. *Benson,* 31 Me. 384, the court say : ' A legal title is equally valid, when once acquired, whether it be by disseizin or by deed ; it vests the fee-simple, although the mode of proof, when adduced to establish it, may differ. . . . . When the title is in controversy, it is to be shown by legal proof, and a continuous disseizin for twenty years is as effectual for that purpose as a deed duly executed. The title is created by the existence of the facts, and not by an exhibition of them in evidence. An open, notorious, exclusive, and adverse possession for twenty years would operate to convey a complete title to the plaintiffs, as much so as any written conveyance. And such title is not only an interest in the land, but it is one of the highest character— the absolute dominion over it—and the appropriate mode of conveying it is by deed.' (See also *Barwick* v. *Thompson,* 7 Term Rep. 488 ; *Beckford* v. *Wade,* 17 Ves. Jr. 87 ; *Moore* v. *Luce,* 29 Pa. St. 260 ; *Lessee of Thompson's Heirs* v. *Green,* 4 Ohio St. 223 ; *Newcombe* v. *Leavitt,* 22 Ala. 631 ; *Chiles* v. *Jones,* 7 Dana, 528.) And again : ' Whatever may be true of personal contracts, it certainly cannot be said with reference to realty, in view of the authorities cited, that the statute only takes away the remedy, or that a right, a title, is not practically extinguished as to one party and acquired by another. The five years' adverse possession, practically, at least, is conclusive evidence of title in the possessor, and if conclusive evidence of title in him, it must be as conclusive evidence of no title in the other. What is the legal definition of title to land ? A title is thus defined by Sir

Edward Coke: ' *Titulus est justa causa possidendi id quod nos-trum est;* or it is the means whereby the owner of land has just possession of his property.' " (2 Blacks. Com. 195.) If this definition presents the true idea of title, then, when a party's means of obtaining possession, or maintaining possession when obtained, have been extinguished by an adverse possession, it would seem to follow that his title is effectually and substantially extinguished in fact, whatever his condition theoretically may be. And the party who has acquired an absolute right of possession, which will not only shield him in his possession against the attacks of all the world, but when ousted, will restore him to and protect him in his just possession, even against the party having the written title, would seem to have a substantial title.

We can see no reason why, for all practical purposes, such a party's title should not be regarded, both in law and equity, as good as though he also had a perfect written title; and we are dealing with practical and not merely theoretical questions. If a party's right of possession has become absolute, has by long adverse possession ripened into what may as well and as properly, for practical purposes, be called title as anything else, so that he can maintain his possession, or recover it when ousted, or maintain all actions for injuries to it against the party having the written title, in all respects in the same manner, and to the same extent as against parties who never were other than entire strangers to the premises; if the party having the written title has lost, by the adverse possession, all means of recovering or protecting possession when acquired without action, and all means of establishing or maintaining any right against the adverse possessor, we can perceive no good reason why such adverse possessor should be annoyed by pretended claims, or have the value of his possession diminished by an apparent title which has lost its vitality. We see no good reason why the party whose adverse possession has practically ripened into a title, should not be entitled to all the remedies to quiet his possession that are incident to possessions under written titles, which are in law and equity no more efficacious to protect the

owners in the actual enjoyment of their possessions under them. Statutes of Limitation are said to be statutes of repose. If so, they should be so construed and administered with respect to cases falling within their purview as to afford complete, not merely partial, repose.

To the same effect is the case of *Alexander* v. *Pendleton*, 8 Cranch, 462. The action was by the party in adverse possession against the other claimants out of possession, and a decree establishing title, and granting affirmative relief quieting it, was rendered, based upon a title acquired by adverse possession. Mr. Chief Justice Marshall said: "The appellant's *title* being secured by possession of more than fifty years, is unquestionably good, and it is proper that the doubts that hang over it should be removed." The statute under which this was done only purported, by its terms, to bar the remedy; it did not provide that the title of the owner should be extinguished, or that the possessor should be invested with a title. In *Sherman* v. *Kane*, 86 N. Y. 64, it is held, where title to land has been acquired by twenty years' adverse possession, it is equally as strong as one obtained by grant, and is not forfeited by an intermission of the actual occupation thereafter. The court say: "If the title had been acquired by grant, such an act could not affect or invalidate it; and as *title by adverse possession is equally strong as one obtained by grant*, no reason exists for making an exception against the latter. A perfect answer, also, to the position of the learned counsel is that the city had *title* by adverse possession, and that title continued after it had become perfect and complete, without regard to the interruption of the actual occupation or possession." It thus appears that adverse possession for the time prescribed vests a perfect title in the possessor as against the former holder of the title and all the world, and that he is entitled to all the remedies at law or in equity which are incident to possession under written titles. (See also *Jones* v. *Brandon*, 59 Miss. 585; *Hinchman* v. *Whetstone*, 23 Ill. 189; 3 Wait Act. and Def. 19; *Cannon* v. *Stockmon*, 36 Cal. 541.) It is hardly necessary to review in detail the testimony. It shows satisfactorily to us that the possession of the plaintiff has been

adverse, exclusive, unbroken, open, and notorious. She has always claimed to be the owner, and as such she has paid the taxes on this land, erected a building on it, set out fruit trees on it, grubbed and cleared part of it, seeded it with timothy and clover, cut hay off it, made and changed fences on it, used firewood from it, sold shingles and rail timber off it, some seasons cultivated it, and in all these various ways actually possessed and exercised acts of ownership over it.

Upon the second point, upon which it is claimed the plaintiff is equally entitled to the relief asked, the conclusion above reached renders it unnecessary to pass further than to remark that the case cited in *School District* v. *Wrabeck*, 31 Minn. 77, seems to sustain the view urged by counsel for plaintiff.

The decree of the court below must be affirmed.