Argued June 27, decided July 15, rehearing denied September 9, 1913.

## THOMAS v. SPENCER.*

(133 Pac. 822.)

**Adverse Possession—Title Acquired—Vesting of Fee.**

1. Adverse possession for the statutory period of ten years vests in the possessor title in fee, with all the rights incident thereto.

**Adverse Possession—Character of Possession.**

2. To be adverse, possession of land must be hostile, under a claim of right, actual and not constructive, open and notorious, exclusive and continuous for the full period of ten years.

**Adverse Possession—Continuity of Possession—Evidence.**

3. In an action to quiet title, evidence *held* to show that the possession by the defendant of land upon an island which was sometimes overflowed but was all suitable for occupancy and cultivation, except at flood times, was interrupted during two years of the necessary ten so as to destroy the continuity of possession.

   [As to the necessity and requisites of continuity of adverse possession, see notes in 13 Am. Dec. 185; 28 Am. St. Rep. 158.]

**Adverse Possession — Hostile Character of Possession — Possession Under Void Tax Deed.**

4. A void tax deed conveys no title, and one entering into possession thereunder is a trespasser.

   [As to invalid tax deeds as color of title, see note in 88 Am. St. Rep. 726.]

**Adverse Possession—Continuity of Possession—Interruption by Fire or Flood.**

5. When the actual occupancy of land is temporarily prevented by flood or fire, the possessor has a reasonable time to resume possession after the flood or fire without there being a discontinuance of his possession.

From Yamhill: WILLIAM GALLOWAY, Judge.

Department 1.    Statement by MR. JUSTICE RAMSEY.

This is a suit by Leona Thomas against F. W. Spencer to quiet title to the southeast quarter of the south-

*On the question of void tax deed as color of title, see note in 27 L. R. A. (N. S.) 340; and as to effect of an invalid tax deed as color of title within general statutes of limitations, see note in 11 L. R. A. (N. S.) 772.                                                          REPORTER.

east quarter of section 23, and the southwest quarter of the southwest quarter, and lots 5 and 6, of section 24, in township 5 south, range 3 west, of the Willamette meridian, in Yamhill County, State of Oregon, containing 160 acres. The complaint is in the usual form.

The amended answer denies the allegations of the complaint and alleges the execution of a tax deed to the defendant by the sheriff and tax collector of Yamhill County, Oregon, purporting to convey to the defendant, on January 4, 1905, the above-described real property. This tax deed was recorded on page 323 of Book 32 of the records of deeds of Yamhill County on January 7, 1895. This tax deed was based upon the assessment of said real property for the year 1891, and a sale for delinquent taxes made on the 10th day of December, 1892. Said deed recites that the defendant paid for said land at said sale $10.05.

The amended answer alleges title in fee simple in said premises in the defendant and pleads the statute of limitations and the purchase at said tax sale, and alleges payment of the taxes on said land by the defendant for the years from 1892 until the beginning of said suit, and the exclusive possession of said premises by the defendant for the ten years immediately preceding the commencement of said suit, etc., and asks that his title to said premises be quieted.

The court below entered findings and a decree against the plaintiff and in favor of the defendant. The plaintiff appealed.

REVERSED : DECREE RENDERED.

For appellant there was a brief, with oral arguments by *Mr. Newton McCoy, Mr. Horace B. Nicholas* and *Mr. J. F. D'Arcy, Jr.*

For respondent there was a brief over the names of *Carson & Brown,* with oral arguments by *Mr. John A. Carson* and *Mr. Thomas Brown.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

This suit was brought by the plaintiff against the defendant to quiet the plaintiff's title to the 160 acres of land described in the complaint. The plaintiff claims to be the owner in fee of said real premises and that said lands have not been in the actual possession of anyone, and alleges that the defendant claims some estate or interest therein adverse to her title and rights in said premises, etc. The defendant denies all the allegations of the complaint and alleges that he is the owner in fee of said real premises, etc. The evidence shows that the plaintiff has a good record title in fee simple to said premises, and that she is entitled to the relief prayed for in her complaint, unless the sheriff's tax deed, pleaded by the amended answer purporting to convey said premises to the defendant, is valid, or unless the defendant obtained title to the said premises by adverse possession thereof. The counsel for the defendant, when this case was argued in this court, expressly admitted that said tax deed was void, and we find from the evidence that it is void for various reasons, but, as its invalidity is expressly admitted by counsel for the defendant, it is not necessary to set forth the reasons for its being invalid. The question for decision is whether the defendant has acquired title to the real premises in question by adverse possession.

1. It is settled by the decisions of this court that in this state adverse possession of real property for the statutory period of ten years vests in the possessor title in fee, extinguishes adverse titles, and entitles the possessor to all the rights incident to a title in fee: *Barrell* v. *Title Guarantee Co.,* 27 Or. 80 (39 Pac. 992); *Parker* v. *Metzger,* 12 Or. 407 (7 Pac. 518); *Joy* v. *Stump,* 14 Or. 361 (12 Pac. 929).

2. The statute of this state does not define adverse possession, but this court has discussed this subject in many cases and has decided what constitutes adverse possession of real property within the meaning of our statute: *Talbot* v. *Cook,* 57 Or. 540 (112 Pac. 709); *Chapman* v. *Dean,* 58 Or. 475 (115 Pac. 154); *Rowland* v. *Williams,* 23 Or. 515–521 (32 Pac. 402); *Curtis* v. *La Grande Water Co.,* 20 Or. 34 (23 Pac. 808, 25 Pac. 378, 10 L. R. A. 484); *Ambrose* v. *Huntington,* 34 Or. 484 (56 Pac. 513); *Willamette R. E.* v. *Hendrix,* 28 Or. 485 (42 Pac. 514, 52 Am. St. Rep. 800); *Wheeler* v. *Taylor,* 32 Or. 436 (52 Pac. 183, 67 Am. St. Rep. 540); *Slater* v. *Reed,* 37 Or. 274 (60 Pac. 709); *Springer* v. *Young,* 14 Or. 280 (12 Pac. 400); *Sommer* v. *Compton,* 52 Or. 173 (96 Pac. 124, 1065); *McNear* v. *Guistin,* 50 Or. 377 (92 Pac. 1075).

In *Chapman* v. *Dean,* 58 Or. 475 (115 Pac. 154), Justice BURNETT states the requisites of adverse possession thus: "To prevail on such a title, the defendants must prescribe in their own right and that of their predecessors. In other words they must plead and prove title by adverse possession. To this there are five essential elements necessary: First, the possession must be hostile and under a claim of right; second, it must be actual; third, it must be open and notorious; fourth it must be exclusive; and, fifth, it must be continuous."

In *Talbot* v. *Cook,* 57 Or. 540 (112 Pac. 709), the court sets forth the requisites of adverse possession in substantially the same words as those quoted, *supra.*

In *Curtis* v. *La Grande Water Co.,* 20 Or. 34 (23 Pac. 808, 25 Pac. 378, 10 L. R. A. 484), Justice LORD says: "To acquire a right of prescription in the lands of another upon the presumption of a grant, the possession must be adverse, continuous, uninterrupted and by the acquiescence of the owner of the land upon which the

easement is claimed. If its inception is permissive or under a license from the owner, it cannot avail to work an ouster. To effect that result, the possession taken must be open, hostile, and continuous; 'he (the person claiming adverse possession) must unfurl his flag on the land and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains and planted the standard of conquest.' "

In *Springer* v. *Young,* 14 Or. 280 (12 Pac. 400), Justice STRAHAN says: "But possession, to constitute a bar either at law or in equity, must be adverse. The statute nowhere defines what shall be an adverse possession sufficient to bar an entry. An adverse possession cannot begin until there has been a disseizin, and to constitute a disseizin there must be an actual expulsion of the true owner for the full period prescribed by the statute. An adverse possession is aptly defined by INGERSOL, J., in *Bryan* v. *Atwater,* 5 Day (Conn.), 181, (5 Am. Dec. 136), to be 'a possession not under the legal proprietor, but entered into without his consent, either directly or indirectly given. It is a possession by which he is disseized and ousted of the lands so possessed.' * * So, also, if at the time one enters, or afterward, he does not claim the title himself, but acknowledges title of another, his possession must be taken as an entry or holding in subordination to the title of the person whose right he acknowledges."

We conclude that possession, to be adverse and to ripen into title, must be hostile, under a claim of right, actual and not constructive, open and notorious, exclusive and continuous for the full period of ten years.

3. The land in question was the homestead claim of Chas. T. J. Smith, the first husband of the plaintiff. He died in 1883, leaving the plaintiff as his surviving widow and three children his heirs at law. These chil-

dren conveyed their interest in this land to their mother, the plaintiff.

The plaintiff and her husband, Smith, resided on this land four years before his death, and he resided on the land a year before he married the plaintiff. The plaintiff made the final payment of fees demanded by the United States Land Office at Oregon City for the land after the death of Mr. Smith, and the patent was issued for the land after this payment was made. When the plaintiff resided on this land, there was a house on it and about 18 acres of the land had been cleared. After the death of her husband, the plaintiff moved away and lived in Portland and other places and made a living by keeping boarders and gave no attention to this land.

The defendant, in good faith, bid in the property at a tax sale in December, 1892, and paid $10.05 for it. It was sold for taxes assessed for 1891, and he received the tax deed on January 4, 1895. In 1893 and 1894, before the defendant obtained the tax deed, Mr. Hawksworth, the second husband of the plaintiff, was on this land part of the time. He grubbed stumps and vine maple and repaired fences. He let W. N. Miller farm the land in 1894 and 1895. The defendant says that he took possession of this land in 1897, and that he has held possession of it ever since that date, and that he has paid the taxes on the land each year. He says he paid from $110 to $125 in the aggregate as taxes. He built some wire fences on the land and claims that he expended in all, in improvements on the land, from $500 to $600. This was expended chiefly in making and repairing fences.

This land is on Athey, or Deer Island, in the Willamette River, near Wheatland, and all of it occasionally overflows, and some of the land overflows each year. The high water destroyed much of the fences, and most

of the fences built by the defendant on the land were destroyed by floods. The defendant placed a flock of goats on this place in 1903, but the evidence shows that they roamed at will on the island, and that they did not remain on this land, the fences being poor and more or less down. The defendant admits that they ran on other lands and that he had to pay damages for the goats running on the lands of other persons nearly every year.

The evidence shows that there was no house or other buildings on the land at any time since the defendant received the tax deed, and that no person lived or resided on the land at any time while the defendant has claimed to own it. The evidence shows that about seven acres of the land was cultivated most of the time while the defendant has claimed to own it, and that all of the land would have been capable of producing crops if it had been cleared. The evidence shows that it is as good land as the average land on the island and of the same general character.

The defendant was a merchant at McMinnville when he received the tax deed, and later he resided at Salem. He never resided near the land. In October or November, 1897, the defendant verbally rented the land to one Ausbe, but the renter did nothing with the land until March, 1898, and never resided on it. Hence the defendant had no such possession of the land as would cause the statute of limitations to begin to run before March, 1898.

None of the tenants of the defendant lived on this land. Their possession consisted in cultivating about seven acres of land, repairing the fences which inclosed about 20 acres of land, and in being there when it was necessary in order to plant, cultivate and harvest the crops on the seven acres of land. There were a few fruit trees on the land in 1897.

The defendant admits that there is not as much land in cultivation on this place now as there was in 1897, and says that the river washed some of it away. He admits that all the clearing done by him on the land consisted in cutting some brush to enable him to make and repair fences. The goats were taken to the place in 1903. The defendant was on the land occasionally and camped on or near it three or four months after he sold out his business at McMinnville. This was in 1903. He says he camped there at other times for a few days at a time.

The defendant's possession of the land from March, 1898, until the end of the year of 1905 may have been sufficient to constitute adverse possession, but this is not certain. He was asked this question on cross-examination, "You would have recognized the rights of the owner if you could have found them?" to which he answered, "Yes, sir, *at all times.*" This answer indicates that his possession was not hostile to the owner and hence not adverse. However, on re-examination by his counsel, in response to questions that were not unsuggestive of the answer desired, he testified, in effect, that at all times after he received the tax deed he claimed to be the owner of the premises and did not acknowledge that any other person had any interest therein. If this was true, whatever may have been the character of his possession, in other respects it was hostile and exclusive. But the defendant did not have possession of the premises in 1906 or 1907. He was not on the land more than a day or two, and he had no tenants on the land in either of those years, and no part of the land was cultivated. The goats that had not been drowned roamed at will on the island, and the gates were open and the fences were down and in bad condition. Animals belonging to residents on the island roamed at will over the land in question. There

was no actual, open or notorious possession of the land
at any time either in 1906 or 1907.    The defendant had
arrangements made with a man to salt the remnants of
the goats once or twice a week during a portion of this
period, but he admits that he had no one even to look
after the goats in 1907.    The evidence shows that the
goats were running at large in 1906 and 1907.    There
was nothing whatever in the defendant's connection
with this land in 1906 or 1907 to give notice of his claim
or to constitute a disseizin or ouster of the owner of
the land.    His adverse possession, if he ever had any,
ceased in 1905.

4. The tax deed was void and conferred upon the de-
fendant nothing but mere color of title.    It did not in-
vest him with any interest in the land.    Every time he
entered upon the land he committed a trespass.

It is the settled law of this state that possession of
land, to be adverse, must be actual, open, notorious and
continuous.    The trespasser ''must unfurl his flag and
keep it flying so that the owner may see, if he will, that
an enemy has invaded his domains and planted the
standard of conquest there.''    If the owner had gone
upon the premises in 1906 or 1907, she would have seen
nothing there to indicate that anyone was in possession
of the land.    There was no actual, open or notorious
possession of these premises during that time in any-
one.    This is not an instance where the land is not
suitable for occupancy or tillage.    About seven acres
of the land had been in cultivation for many years, ex-
cept in 1906 and 1907, and the remainder of it would
be suitable for cultivation if it were cleared.    In *Am-
brose* v. *Huntington,* 34 Or. 484 (56 Pac. 513), the
land was suitable for pasture only.

The plaintiff's first husband, Mr. Smith, and the
plaintiff resided on and cultivated this land long
enough to obtain title to it under the United States

homestead law. Most of the people owning land on the island reside on it, and this land is of the same general character as the other lands on the island.

5. When the actual, open and notorious occupancy of land is temporarily prevented by floods or fire, the possessor has a reasonable time after the flood or fire has ceased to resume his actual, open and notorious possession of the land, without there being a discontinuation of his adverse possession during the time that his occupancy was so interrupted. In this case the floods lasted only a few days at a time.

The defendant's possession may have been adverse from March, 1898, until the end of the year 1905, a period of eight years, but during 1906 and 1907 he had no adverse possession. It necessarily follows that he did not acquire title to these premises by adverse possession, and that the plaintiff's record title was not divested.

We find that the plaintiff is the owner in fee of the premises and entitled to the possession thereof and to the relief prayed for in regard thereto in the complaint, and that the defendant owns no part of said premises and is not entitled to the possession thereof or to the relief prayed for in the amended answer. We find from the evidence that the defendant paid in good faith, as taxes on the land in question, about $115, and that these taxes were a lien on the land and had to be paid, and that the plaintiff received the benefit of said payment. The defendant has received, as rent from the land, enough to pay fully the interest on the amount paid as taxes. We find that the defendant is entitled to a decree for said $115.

As equity favors the vigilant rather than those who slumber on their rights, and as the plaintiff and those under whom she claims delayed for a long time to institute legal proceedings to obtain their interest in this

land, we think that neither party should be allowed costs or disbursements in this court or in the court below.

The decree of the court below is reversed, and a decree will be entered in favor of the plaintiff for the relief prayed for in the complaint, excepting as to costs and disbursements, and a decree will be entered in favor of the defendant and against the plaintiff for the recovery of the sum of $115 for taxes paid, but execution for said·sum of $115 will not be issued until the expiration of 60 days from the time that the decree of this court is entered in the court below, and neither party will recover costs or disbursements in the court below or in this court.

REVERSED: DECREE RENDERED.    REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.