Argued October 11, 1932; reversed January 10; rehearing denied
February 14, 1933

## ENRIGHT *v.* MEVES

(18 P. (2d) 216)

*Loring K. Adams,* of Portland, for appellant.
*Henry S. Westbrook,* of Portland, for respondent.

RAND, C. J. Plaintiff brought this suit to quiet title to a four-foot strip on the east side of lot 13 in block 22 in First Addition to Holladay Park Addition to the city of Portland. Defendant is the owner of lot 14, an adjoining lot lying immediately to the east of lot 13 and, in her answer, she alleges that she is the owner of the strip in controversy by adverse posses-

sion of herself and her predecessors in interest from October 1, 1906, to January 1, 1925. Since said last mentioned date, she alleges that the plaintiff wrongfully entered upon said strip and constructed a fence on the east side thereof (the dividing line between said lots), and prays that her title thereto be quieted. The court below entered a decree in favor of defendant and plaintiff has appealed.

It appears from the evidence that both plaintiff and defendant deraign title to their respective lots by mesne conveyances from a common grantor, namely: The Title Guarantee & Trust Company, which company on September 20, 1906, conveyed lot 14 to Henry M. Gray and wife and on May 20, 1907, lot 13 to C. D. Moore. On April 28, 1916, Moore conveyed lot 13 to plaintiff by a warranty deed and on October 29, 1919, the Grays conveyed lot 14 to defendant. At the time these first conveyances were made the corners of these lots had not been marked out upon the ground and for some time thereafter the Grays and the Moores believed that the dividing line between said lots was some six or seven feet westerly of what was afterwards ascertained to be the true line. Immediately following their purchase of lot 14, the Grays constructed a dwelling house thereon, where they resided until their sale to defendant and shortly following his purchase of lot 13, C. D. Moore, now deceased, who was a brother of Mrs. Gray, also constructed a dwelling house on his own lot, where he and his wife resided until their sale to plaintiff. While so living there and before the dividing line between said lots had been ascertained by the owners of the two lots, Mrs. Gray planted some rosebushes three or four feet west of the true line, believing at the time that they were

planted on her own ground and it appears that on the rear of lot 13 Moore erected a chicken house and a fence on one side of which Mrs. Gray planted some sweet peas.

When this chicken house and fence were built, the evidence does not disclose, nor is it possible to determine the exact location of either, although there is some evidence tending to show that they were erected on or close to what was first supposed to be the dividing line between the two properties. The evidence shows that neither property was ever separately enclosed and that no division fence was built nor was any such line established or agreed upon during the time the premises were occupied by the first-named grantors. As stated, Mr. Moore was a brother of Mrs. Gray and, so far as the evidence shows, their relations were always friendly. A passageway was constructed between the rear entrances of the two dwelling houses and seems to have been in constant use by the two families.

It is now contended that the planting, by Mrs. Gray, of these rosebushes on the disputed strip, some of which are still alive, and the mowing of the lawn between them and the Gray property constituted adverse possession. This evidence, however, falls far short of establishing adverse possession and particularly so when considered in connection with the close relationship which existed between Mrs. Gray and Mr. Moore, and the fact that on April 28, 1916, the Moores gave a warranty deed to plaintiff for the entire lot and pointed out to him the true dividing line between the two properties, and the evidence to which we will now refer.

Mr. Moore is dead but his widow, now Mrs. Imel, testified that, after the true line had been established,

she and her husband always claimed ownership and were in possession of all of lot 13, as so established, and nobody ever disputed their right. She says: "There was no controversy about it; they knew we had 50 feet, and they knew where it came to, and we knew they had 50 feet and knew where it came to". In referring to the rosebushes, she says: "Mr. and Mrs. Gray had some in there, and I guess we put some there, too. After the survey came on they were supposed to be ours. We were claiming them and there was no dispute about it".

Mr. Gray was called as a witness by defendant and on cross-examination he testified: "Q. And did you mean to convey to them any more than that lot 14? A. No, sir. Q. You meant to convey, as the deed itself says, 'All of lot 14'. * * * A. Yes, sir. Q. And did you mean to convey any more of the lot than a fifty-foot frontage? A. I did not. Q. You meant to convey a lot with a fifty-foot frontage? A. I did". Again, Mr. Gray said: "Q. You meant to convey by your deed the exact property you got in your deed from the Title Guarantee & Trust Company? A. Yes, sir; that was my property. Q. Nothing more and nothing less than that? A. Yes, sir".

Mrs. Gray also testified: "Q. And did you intend to give more than what is included in that deed? A. No, I did not. Q. You intended to give 50 feet. A. Yes, sir. Q. And intended to give 50 feet east of the Moores? A. I intended to give them—in that deed—I intended to give 50 feet from our line on the northwest corner. Q. And you didn't mean to encroach or give any property out of lot 13, did you? A. No, I guess I did not; all I intended to give was our own lot. Q. No more and

no less? A. Yes, sir. Q. That is correct, is it not? A. Yes; that 50 feet is all we owned, and that is all we could give a deed for''.

Since plaintiff purchased lot 13, his testimony shows, he has been in possession of the entire lot during all of that time. In 1921 he laid concrete and erected posts on the true line in the rear of the two lots and in 1927 he extended a similar construction on the true line to a point opposite the front of the two houses and placed a gate in the passageway between the two houses.

A careful consideration of this evidence convinces us that the Grays intended to claim only to the true line and that whatever they may have done before that line had been established was done under the mistaken belief on their part that it was on their own property.

According to the evidence, no part of the property in dispute is now or ever has been occupied by any building or structure belonging to defendant or any grantor of hers, nor has it ever been enclosed, even in part, together with her own property by any fence or other barrier. Plaintiff and his grantors have always paid, and the amounts are substantial, all taxes and assessments for street improvements levied upon the entire lot, and according to defendant's own testimony, her claimed possession of the disputed property was temporary and occasional only, none of which, either separately or collectively were sufficient to indicate any claim of ownership upon her part, and it is not even pretended that she ever openly asserted any claim to the property whatever until shortly prior to the commencement of this action. As was said in *Bayne v. Brown,* 60 Or. 110 (118 P. 282) :

''A strong showing should be required to establish adverse possession of a portion of a city lot not occu-

pied by buildings, as in such cases the boundaries of the lots are seldom conspicuously marked, and lines are not closely drawn until occasion arises to determine them accurately, and, unless mutually agreed upon or possession taken by barriers erected, the owner should be presumed to occupy to the true line''.

 To constitute adverse possession so as to divest the true owner of his title, the possession must be under a claim of ownership or color of title. That defendant did not have color of title is admitted. She must, therefore, base her claim upon claim of ownership and her possession must be actual, not constructive, for the constructive possession is in the true owner of the land. The possession must not only be actual but it must also be open and notorious and it must be hostile, exclusive and continuous during the entire period required by the statute of limitations: *Houck v. Houck,* 133 Or. 78 (283 P. 25, 288 P. 213) ; *Harris v. Southeast Portland Lumber Company,* 123 Or. 549 (262 P. 243), and cases there cited.

As said in *McNear v. Guistin,* 50 Or. 377 (92 P. 1075) :

''* * * There is no particular manner by which such possession may be indicated or made manifest, and no particular act or series of acts are required to be done on the land. There must, however, be actual use and occupancy, continuous for the necessary length of time, of such an unequivocal character as will indicate to the owner an assertion of an exclusive appropriation and ownership. In short, the acts of the alleged occupant must be so open and exclusive as to leave no inquiry as to his intention, so notorious that the owner may be presumed to have knowledge that the occupancy is adverse, and so continuous as to have furnished a cause of action every day during the required period''.

Measured by these rules, the alleged possession by Mrs. Gray during the time her brother owned the property now owned by plaintiff was not adverse possession in any sense of the term and, therefore, there could be no tacking of such possession by her grantor at the time defendant acquired the title to lot 14, nor does the evidence show that there was any contract or agreement between Mrs. Gray and defendant at or before defendant acquired lot 14 that any former possession by Mrs. Gray of the disputed property should be transferred to defendant. After defendant acquired title to lot 14, she performed no acts of ownership pertaining to the property in dispute sufficient to indicate to plaintiff that she claimed ownership thereof.

For these reasons, the decree of the court below must be reversed and it is so ordered, neither side to recover costs in this court or the court below.

BEAN, ROSSMAN and KELLY, JJ., concur.