Argued April 7; reversed April 20, 1943

# SERTIC *v.* ROBERTS
### (136 P. (2d) 248)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Windsor Calkins,* of Eugene (Calkins & Calkins, of Eugene, on the brief), for appellant.

*Whitten Swafford,* of Eugene, for respondent.

Action to recover real property. Defendant pleads title to an undetermined fee for possession for an uncertain time of part of the premises in suit by adverse possession and estoppel in pais. From a judgment upholding defendant's prescriptive title, plaintiff appeals.

KELLY, J. In his complaint filed May 22, 1941, plaintiff Paul Sertic alleges that he is the owner in fee simple and entitled to the possession of lot 4 in section 35, township 17, south range 6 west of the Willamette Meridian in Lane county, Oregon. Plaintiff also alleges that defendant wrongfully withholds said real property from the plaintiff to plaintiff's damage in the sum of $600.00.

Defendant's answer was filed on September 12, 1941. The allegations in defendant's further and separate answers will be stated here, because of the statutory provisions to the effect that in a case of this kind, the defendant shall not be allowed to give evidence of any estate in himself or another in the

property or of any license or right to the possession thereof, unless the same be pleaded in his answer; and, if so pleaded, the nature and duration of such estate, or license or right of the possession, shall be set forth with the certainty and particularity required in a complaint. Section 8-204, O. C. L. A. Vol. 1, p. 677.

Only by considering defendant's further and separate answers may we determine what the issues are.

The substance of paragraph I of defendant's first further and separate answer is that in the year 1924, defendant entered into possession of about a third of an acre of said lot 4 claimed by plaintiff, lying in the northwest corner thereof and northwesterly of the channel of the Long Tom River, and defendant makes no claim to any other portion of said premises.

Paragraph II of defendant's first further and separate answer is as follows:

"II

"That at said time said approximately one third of an acre was unimproved, unoccupied and adjoined a sawmill site held by defendant under lease, and since said time the defendant has occupied said premises and his actual occupancy has been complete, visible, notorious, continuous, distinct, hostile and inclusive against the plaintiff and the whole world, and same has been used as part of the mill yard of defendant and a small portion of the sawmill frame may extend across the line, but an exact survey has not been made. And the plaintiff made no claim thereto until about a year ago."

Paragraph III of defendant's first further and separate answer is as follows:

"III

"That the defendant by more than ten years possession and use as a part of the mill site claims an

undetermined fee for possession for such length of time as the life of the sawmill operation now carried on partially thereon continues and not the absolute title in fee simple, to said approximately one third of an acre.''

Concluding said first further and separate answer is the following sentence:

"Wherefore defendant says his rights should be so found and established and for his costs and disbursements herein.''

In defendant's second further and separate answer, paragraphs I, II and III of his first further and separate answer are repeated as paragraphs I, II and III of said second further and separate answer.

We quote the remainder of said second further and separate answer:

"IV

"That after procuring said lease on the mill site as above set out the defendant has erected and maintained thereon a sawmill at a cost of more than $10,000.00 and has used the siding leased from the Southern Pacific Railway Company and said approximately a third of an acre has been used therewith for a refuse burner, part of mill yard and part of loading platforms, and things incident to the operation of said sawmill and as so constructed is necessary therefor.

V

"That at the time of the erection of said sawmill the plaintiff sought employment and was employed to help lay out and construct the mill frame and other work and had full knowledge of the location thereof and helped to place the mill frame timbers that probably extend over the west line of said lot 4 a few feet and did not at said time notify the defendant of his claim of ownership or make any claim to said third of an acre and in all things

acquiesced in the location and erection of said sawmill and has never made any claim to said premises or objections thereto until about a year ago.

## VI

"That to move said mill at this time would require an expense of estimated between three and five thousand dollars disrupt the labor organization built up over a period of years and close down production and would be an irreparable injury to the defendant, and by all the facts plaintiff should be held estopped.

## VII

"Wherefore defendant says plaintiff should be estopped and held estopped and take nothing and defendant recover his costs and disbursements herein."

In defendant's third further and separate answer the first five paragraphs of said second further and separate answer are repeated; and the remainder of said third further and separate answer is as follows:

## "VI

"That said approximate third of an acre is bound on the west by lands held under lease by the defendant from persons other than plaintiff and on the north by lands held under lease by defendant from the Southern Pacific Railway Company and otherwise by the Long Tom River with high banks and wholly inaccessible to the plaintiff without heavy expense of a bridge over the Long Tom River, or across lands under lease to defendant and its actual value probably at the rate of not more than a hundred dollars per acre and its rental value only nominal.

## VII

"That for more than fifteen years the defendant has had, owned, planked and maintained a private roadway from said sawmill site north for three

quarters of a mile to the Elmira-Noti Public road and the plaintiff has during such time used said road as the only roadway passable in wet weather to his home and farm and to haul the general needs of his farm and wood and timber products, and the plaintiff has during such time used other roadways and rights of the defendant, and all of a rental value of more than the rental value of said third of an acre occupied by the defendant, and all without contributing to the upkeep of said road or paying any rental or consideration therefor.

## VIII

"That the defendant in addition to the expense of constructing said sawmill and establishing the business of manufacturing and selling lumber has purchased timber and planned and will necessarily continue operation at said location for an undetermined period of years and for probably more than ten years.

## IX

"That to move said mill at this [time] would require an expense of estimated between three and five thousand dollars, disrupt labor organization built up over a period of years, and close down production and cause a loss of markets and would be an irreparable injury to the defendant, and all the facts should be ascertained and the plaintiff held estopped and enjoined from interfering with said operation until the completion of the manufacture of the timber produced, planned and available therefor and the reasonable business life of said sawmill operation.

## X

"That the defendant offers to do equity and if it be equitable that he pay the plaintiff a reasonable rental hereafter for the use of said third of an acre that the amount thereof should be ascertained and fixed or other equities adjusted.

128

"That the defendant has no plain, adequate and complete remedy at law and seeks relief in equity by this special answer.

"Wherefore defendant prays that the plaintiff take nothing and that the equities herein be ascertained and determined and the plaintiff held estopped and enjoined from interfering with the use of said third of an acre occupied by him until the completion of his mill operation on said location on such terms or conditions may be equitable and for such other relief as may be equitable and for his costs and disbursements herein."

In his reply, filed September 19, 1941, among other things, plaintiff alleges:

"That the defendant occupied the premises described in plaintiff's complaint from July 21, 1924 to July 21, 1934 under that certain lease executed on July 21, 1924, by the plaintiff and the defendant, a copy of which lease is attached hereto and made a part hereof as though fully set out herein."

The memorandum attached to and made a part of plaintiff's reply is as follows:

"Memorandum

"It is hereby agreed by and between Paul Sertic and Neil Roberts, as follows:

"For $50.00 paid said Sertic hereby gives and grants to said Roberts the right to make roadways and right of way for roads across lots 1, 2, 3, 4, and 5 of Sec 34 and the part of SW ¼ of Sec. 35 owned by me in Twp 17 S Range 6 West of W M in Lane County, Oregon, to haul logs, timber and timber products from and connecting with land and territory south of such land and things incident thereto, and said Roberts agrees to keep gates closed when necessary to keep stock from running through, put up all fences he may for any

reason tear down, and confine the roads to one location; and said Sertic may use said road for farm hauling use and removing wood when such use does not interfere with said Roberts, and all to continue for ten years.

"It is also agreed that said Roberts may locate sawmill site on north line of said land and if so and a portion of land of Sertic is used therefor all buildings, machinery and equipment shall remain personal property of Roberts and may be removed; and this agreement shall continue for ten years as to such site at a rental of $......................., and if the mill is still in operation at the end of ten years

------------------------------------------------------------------------

Signed in duplicate this July 21, 1924.

(Signed) Neal Roberts.

Witness.

Will G. Norwood

I consent and agree to the above.

(Signed) Paul Sertic"

Defendant's first further and separate answer is an attempt to plead title in defendant by adverse possession.

By the matter in his second further and separate answer, which is not contained in his first further and separate answer, defendant seeks to interpose a plea in estoppel.

The matter not alleged either in the first or second further and separate answers, but which is set out in defendant's third further and separate answer, appears to present an unliquidated equitable counterclaim or setoff to plaintiff's claim for damages, and an offer by defendant to pay plaintiff a reasonable rental hereafter for the use of the premises in controversy.

■■ The attempted plea of title by adverse possession is insufficient, because defendant's possession is not alleged to have been exclusive. Exclusive possession is an essential element of adverse possession. 2 C. J. S., Adverse Possession, p. 565, Sec. 47, citing *Enright v. Meves,* 142 Or. 88, 18 P. 2d 216; *Houck v. Houck,* 133 Or. 78, 283 P. 25, 288 P. 213; *Harris v. Southeast Portland Lumber Co.,* 123 Or. 549, 262 P. 243; *Anderson v. Richards,* 100 Or. 641, 198 P. 570, and *Smith v. Algona Lumber Co.,* 73 Or. 1, 136 P. 7, 143 P. 921.

■ There must be actual occupancy of such a character as to indicate exclusive ownership in the occupant. *Joy v. Stump,* 14 Or. 361, 364, 12 P. 929; *Anderson v. McCormick,* 18 Or. 301, 305, 22 P. 1062; *Altschul v. O'Neill,* 35 Or. 202, 221, 58 P. 95; *Lais v. Smith,* 63 Or. 206, 207, 127 P. 26.

The claim asserted by defendant herein is not of the character considered in such cases as *City of La Crosse v. Cameron,* 80 F. 264, 46 U. S. App. 722, 25 C. C. A. 399; *Fairbanks, et al. v. San Francisco & N. P. Ry. Co.,* 115 Cal. 579, 47 P. 450; *Scheuber v. Held,* 47 Wis. 340, 2 N. W. 779 and *Wilklow v. Lane,* 37 Barb. (N. Y.) 244. In the cases last cited, defendants claimed ownership of easements. The defendant in the case at bar does not claim ownership, but merely an undetermined right of occupancy for an uncertain term.

■ A tenant cannot acquire title by adverse possession unless, with the knowledge of the true owner, he openly and explicitly disclaims any holding under his former landlord and unreservedly asserts that he is the owner of the true title. *Nessley v. Ladd,* 29 Or. 354, 45 P. 904.

It appears also that defendant is not now claiming and never has claimed to be the owner in fee of the premises in suit, but only of an undetermined fee for possession for an uncertain term.

Defendant's attempt to plead estoppel is also fatally defective. There is no statement that defendant relied upon the course alleged to have been taken by plaintiff; and there is no fact stated in the complaint which defendant alleges the plaintiff ought not to be permitted to show.

Defendant's attempt to interpose an equitable counterclaim and to procure a leasehold interest by paying future rent is not supported by such certainty or definiteness of facts alleged as to merit the relief sought. The rental value of defendant's roadway over which for fifteen years plaintiff has been hauling his farm wood and timber produce is not specifically alleged, but the acquisition by plaintiff of an easement by user is indicated.

This leads to the result that the only issue presented by the pleadings is that which is joined by defendant's denial of the facts alleged in plaintiff's complaint.

The learned and experienced trial judge overruled defendant's motion that the cause be withdrawn from hearing as a law action and considered as an equity matter on the answer as filed and the relief as asked for. No appeal has been taken by defendant. As stated, defendant's answer does not state facts justifying the interposition of a court of equity.

The testimony of defendant is no stronger in his behalf than his pleading.

Defendant testified that upon the day following the execution of the memorandum, a copy of which is made a part of plaintiff's reply, defendant secured a lease

for a mill site from Emmett Withrow. In the course of his direct examination, the defendant testified as follows:

"Q Well, were you getting this [the mill site] "under this lease [the Sertic lease] at the time?
A No.
The Court: Well, what were you getting it under? What was your authority for building part of this mill there on some of this land in dispute?
A Because I thought it was Withrow's land.

\*  \*  \*  \*  \*

The Court: You thought it was Withrow's land.
A Yes.
Mr. Swafford: Q. When did you first learn that it wasn't Withrow's land?
A Sometime in the year 1940, in the latter part.
Q Who told you?
A Paul Sertic himself."

Mr. Emmett Withrow was called as a witness for defendant and in answer to questions by the court testified as follows:

"The Court: Q. Mr. Withrow, did you claim this land in dispute to be yours?
A. No, sir.
The Court: Q. You never did claim it?
A. No, sir."

On April 21, 1926, in a suit then pending in the circuit court in and for Lane county, Oregon, between the parties hereto, a stipulation of settlement was made and entered into, containing the provision that the memorandum of agreement existing between the parties hereto be made definite in nine particulars, not pertinent to the instant case, which stipulation concluded with the following provisions:

"This does not alter or set aside the original memorandum but adds to and makes same definite. It does not affect except as herein stated and does not affect other rights of parties."

The plaintiff testified that when the memorandum of agreement of July 21, 1924, was executed, he did not know that any part of his land was in the northwest quarter of section 35 and that he intended to include in said memorandum a description of all of his land.

Plaintiff's contention is that defendant's occupancy of the premises in dispute was pursuant to the memorandum of July 21, 1924, while defendant's contention is that such occupancy was by virtue of a lease executed by Mr. Withrow.

Neither defendant nor Mr. Withrow claims that plaintiff is not the owner in fee simple of the premises in suit.

■ The question presents itself, whether a lessee of a third party, claiming the right of occupancy by virtue of his lease from such third party, may originate adverse possession without direction or even knowledge or consent of his lessor against the owner of premises mistakenly believed by such lessee to be owned by his lessor? We find the question answered in the negative by this court:

"It is true that the possession of the tenant may be the possession of the landlord, but the tenant cannot, without the direction or even the knowledge or consent of the landlord, effect a disseisin in his favor or originate adverse possession." *Bayne v. Brown,* 60 Or. 110, 112, 118 P. 282.

In that case, the plaintiff, Mr. Bayne, sought to invoke the claim of adverse possession by tacking his

purported adverse possession to that of Mrs. Strang who had sold to plaintiff premises adjoining the small strip of land in controversy. Defendant was the record owner of the disputed strip. Mrs. Strang was in possession only by tenants. It was there held that there was no disseisin or adverse occupancy or claim of ownership to which there could be a tacking of occupancy or possession as an element of title and adverse possession.

Adverse possession depends upon the intent of the occupant to claim and hold real property in opposition to all the world. *Willamette Real Estate Co. v. Hendrix,* 28 Or. 485, 497, 42 P. 514, 52 Am. St. Rep. 800. If, at the time one enters, or afterward, he does not claim the title himself, but acknowledges title of another, his possession must be taken as an entry or holding in subordination to the title of the person whose right he acknowledges. *Bryan v. Atwater,* 5 Day (Conn.) 181, 5 Am. Dec. 136, quoted in *Springer v. Young,* 14 Or. 280, 12 P. 400, and again in *Thomas v. Spencer,* 66 Or. 359, 363, 133 P. 822. Also stated in *Rung v. Shoneberger,* 2 Watts (Pa.) 23, 27, 26 Am. Dec. 95. Adverse possession for the statutory period not only bars the remedy of the holder of the paper title, but also extinguishes his title and vests title in fee in the adverse occupant. 2 C. J., Adverse Possession, p. 251, Section 552, citing the following Oregon cases: *Spath v. Sales,* 70 Or. 269, 141 P. 160; *Sharpe v. Catron,* 67 Or. 368, 136 P. 20; *Thomas v. Spencer,* supra; *Quinn v. Willamette Pulp & P. Co.,* 63 Or. 549, 553, 126 P. 1; *Neal v. Davis,* 53 Or. 423, 99 P. 69, 101 P. 212; *Hamilton v. Flournoy,* 44 Or. 97, 74 P. 483; *Beale v. Hite,* 35 Or. 176, 57 P. 322, 58 P. 102; *Ambrose v. Huntington,* 34 Or. 484, 56 P. 513; *Bar-*

*rell v. Title Guarantee Etc. Co.,* 27 Or. 77, 29 P. 992;
*Logus v. Hutson,* 24 Or. 528, 34 P. 477; *Rowland v.
Williams,* 23 Or. 515, 32 P. 402; *Joy v. Stump,* supra;
*Parker v. Metzger,* 12 Or. 407, 7 P. 518. To the same
point the following Oregon cases are cited in 2 C. J.
S., Adverse Possession, p. 803, Sec. 199, note 80; *Phipps
v. Stancliff,* 110 Or. 299, 214 P. 335, 222 P. 328; *Anderson v. Richards,* 100 Or. 641, 198 P. 570; *Looney v. Sears,*
94 Or. 690, 185 P. 925, 186 P. 548; and *Krueger v.
Brooks,* 94 Or. 119, 184 P. 285.

See also *McKinney v. Hindman,* 86 Or. 545, 548,
169 P. 93, 1 A. L. R. 1476, citing *Caufield v. Clark,*
17 Or. 473, 21 P. 443, 11 Am. St. Rep. 845; *Dunnigan v.
Wood,* 58 Or. 119, 112 P. 531; *Stout v. Michelbook,*
58 Or. 372, 114 P. 929, and *Parker v. Wolf,* 69 Or. 446,
138 P. 463.

Defendant does not assert a title in fee simple, but
expressly disclaims it.

After the terms of the Sertic-Roberts lease had
expired, there was a conversation between Mr. Sertic
and Mr. Roberts about renewing the lease. We quote
from Mr. Sertic's testimony:

"Q. Did there come a time after 1934 when Mr.
Roberts asked you for a lease to the property?

A. Yes, I think it was in 1935. I and a fellow
was hauling wood through there and he came up
on my side of the — — on my property where I
was hauling it and asked me if I would renew the
lease. I told him 'not at present', and he didn't say
much. Walked away."

We also quote from Mr. Roberts' testimony:

"Q. Now, something has been said here about
you asking to renew. Did you ever talk to Mr. Sertic
about renewing that lease or road license?

A. Yes, I asked him about that contract there, hauling logs across the place there. I said 'do you know it has expired'? He said 'Yes'. I said 'shall we renew it?' He said, 'no'. 'We will wait and if you ever open up and go to logging across me we will make a contract.' "

By the testimony, of both of the parties hereto, last quoted, it is evident that the lease of July 21, 1924, was deemed to have been in effect during its full term of ten years; and, hence, a construction of that memorandum of agreement is required.

■ Bearing in mind that it was prepared by counsel for defendant at defendant's instance, if ambiguous, it should be construed strictly against defendant.

Manifestly, there is ambiguity. The first part of the agreement, namely, that which grants to defendant the right to make roadways and rights of way for roads, describes only plaintiff's land.

The second part grants defendant permission to locate a sawmill site on the north line thereof and then the following language is used:

"and if so and a portion of land of Sertic is used therefor, all buildings, machinery and equipment shall remain personal property of Roberts and may be removed."

It is obvious that if any of the premises on the north line of Sertic's land was used as a mill site by Roberts by virtue of the instrument under consideration, the part so used would be a portion of the land of Sertic. By striking out the words, "and if so and a portion of the land of Sertic is used therefor" and substituting therefor the phrase "in which event" the ambiguity would be obviated.

We think, however, that we would not be justified in such mutilation of the instrument. The construction, which in our judgment most nearly reflects the meaning of the language employed, is accomplished by treating the words, "may locate sawmill on north line of said land" as merely indicating that there was no personal objection of plaintiff's part to the establishment and operation of a mill on either side of plaintiff's north line and by construing the following clause as expressly providing that, if a portion of plaintiff's land should be used therefor, title to the buildings, machinery and equipment should remain in defendant. It will be noted that the clause dealing with the use of plaintiff's land by defendant for a sawmill site is not restricted to said land or to plaintiff's land as above described. In fact, the clause in itself is not expressly confined to any particular part, parcel or portion of plaintiff's land. A reasonable construction, however, giving effect to the context would restrict it to land in the vicinity of the north line of plaintiff's land and the disputed premises are in close proximity thereto.

As we read the record, the memorandum of leasing was amplified by stipulation on April 21, 1926. The roadway constructed pursuant to its terms was used by defendant until the fall of 1930; and, as late as 1935, defendant asked if plaintiff would renew it, calling plaintiff's attention to the fact that it had expired. Whereupon plaintiff told defendant that he knew that the agreement had expired. This constituted a recognition by both parties, that during the term of ten years from the date of its execution, the memorandum of leasing and the written option to lease plaintiff's land or a part thereof for a mill site was in effect. No notice

138

was given by either party to the other that it was to be disregarded, rescinded, canceled or annulled.

■ During the term ending on July 21, 1934, plaintiff could not have maintained an action to recover the premises in dispute without showing that in some manner the agreement had been breached, abandoned, or otherwise terminated. Nothing of that kind appears in the record.

For these reasons, defendant's claim to ownership by adverse possession cannot be upheld.

■■. A mere possessory right to the occupancy of real property may be pleaded defensively in an action such as the one at bar. This right, however, is distinct from the right to assert title by adverse possession. In the case at bar, exclusive possession by defendant is neither pleaded nor proven. If the term, "inclusive", which defendant uses in characterizing the nature of his possession had been employed but once, it might very properly be deemed to have been merely a clerical error and treated as if the term, "exclusive", had been used; but defendant repeats and re-repeats the word "inclusive" and nowhere in his answer does he say that his possession was exclusive. His pleading therefore does not support a finding of exclusive possession. His pleading expressly states that his possession was hostile and adverse; but, as stated, the evidence does not support his pleading or a finding that his possession was hostile and adverse. An undetermined interest for an uncertain term cannot be acquired by adverse possession for the reason that a claim merely of such an interest by implication admits that others have a superior title thereto. In the case at bar, the conclusion is inescapable that the plaintiff is the owner in fee of the premises in suit.

■ As to damages sustained by plaintiff, because of defendant's occupancy of the premises in controversy which comprises only four-tenths of an acre, we are impressed by the testimony of defendant's witness, Mr. Withrow, who testified that the rental value thereof would be eight dollars per year. For the six years prior to the institution of this action, the damages, which under the law constitute the reasonable value of the use of the premises, would amount to forty-eight dollars, and for the two years subsequent to the institution of the action would be sixteen dollars additional thereto.

The judgment of the circuit court is reversed and this cause is remanded with instructions to enter judgment of restitution as prayed for in plaintiff's complaint and also to enter a judgment in favor of plaintiff and against defendant in the sum of sixty-four dollars as damages, and for plaintiff's costs and disbursements in the trial court and on this appeal.