## ROBERT M. AND PHYLLIS J. BRICE $v.$ DEPARTMENT OF REVENUE

Walter D. Alley, Portland, represented plaintiffs.

Gerald F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered December 3, 1976.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appealed from the defendant's Order No. I-75-22, dated June 19, 1975, in which the defendant denied an income tax deduction taken by plaintiffs on their 1970 personal income tax return of the value of an alleged gift of land to a municipal corporation.

The plaintiff husband, Robert M. Brice, of Lincoln City, and his partner, David Boland, a resident of Portland, have for many years engaged in real estate developments, building construction, and property management. The testimony shows that 67 acres of unimproved property, partially located in the SW ¼ of the SE ¼ of Sec. 5, T 10 S, R 11 W, WM, in Lincoln County, was purchased by them in 1964 from a Mr. Salway, a Portland attorney. As purchasers, the partners took title subject to a lease for years held by Mr. Victor Dollar, a friend of Mr. Salway. Mr. Salway advised the partners that the Beverly Beach Water District had placed a pump house, water pump

and tank on a portion of the land, apparently with the permission of the lessee, and he made clear that the purchasers must take the land as they found it; *i.e.,* if they wished to oust the water district, the burden would fall upon them. Thereafter, Mr. Dollar quitclaimed all his interest in the property to the purchasers (by a transfer to Mr. and Mrs. Boland). The title record shows no rights whatsoever vested in the water district.

The court visited the site of the subject property in company with counsel, plaintiffs and witnesses. The 0.94 acre contains a deep ravine, many feet below the elevation of "old" U.S. Highway No. 101 and of Marine Drive South. A part of the ravine contains a stream on which the water district depends and as to which, apparently, it has water rights. The pump and tank, situated near the stream, utilize only a small portion of ground.

The testimony showed that a part, if not all, of the water district's improvements above described were originally located on the old U.S. Highway No. 101 right-of-way which marks the westerly boundary of the 0.94 acre here in question; the improvements were moved onto the subject property during the period of Mr. Dollar's lease, with his permission, and prior to the sale to the plaintiffs.

Two or three years after the acquisition of the property by the partners, they began development and sale of lots in the westerly 25 to 30 acres of their purchase, lying north of the subject property. Their plat was filed in 1968 (naming the development "Finisterre"). The southerly boundary of Finisterre is a street, 50 feet in width, named Marine Drive South, which, at the point where it leaves old U.S. Highway No. 101, constitutes part of the northern boundary of the subject property. A waterline was run by the part-

ners to the platted parcels from the area of the water district's pump and the water district personnel attached the line to the pump.

One of the plaintiffs, Mr. Brice, testified that in order to obtain approval of the subdivision plat, he had to obtain assurance from the water district that water would be provided to the subdivision. Although the subdivision was not located within the boundaries of the water district at that time, this assurance was obtained and the Lincoln County Planning Commission approved the plat.

The testimony shows many contacts between plaintiffs and the water district. For example, because the partners had installed all necessary water pipelines and connecting fixtures in the subdivision, the water district was not required to perform any additional work to serve lot purchasers. The water district board agreed to rebate to the partnership half of the normal hookup fee (then $200), received from subdivision purchasers, because it had no additional work to do before beginning service. Plaintiff stated that he and his partner had received some payments from the water district under this agreement but that the practice had been discontinued for approximately five years.

In 1970, plaintiff and his partner deeded the 0.94 acre which was occupied by the pump house to the water district. The fair market value of the property on the date of the gift was determined by a professional appraiser to be $20,000. The value is not contested in this proceeding. On their 1970 tax return, the plaintiffs deducted their partnership interest in the property, $10,000, as a charitable contribution. (The partnership's cost basis was $132.)

The defendant pleaded that there could have been no donative intent in the plaintiffs because (a) the

plaintiffs were required to transfer the property to the water district in furtherance of their business of subdividing and selling platted land; and (b) the subject property had actually been acquired by the water district through adverse possession prior to the sale by Mr. Salway to plaintiffs. Alternatively, defendant contends that if a donative intent were found, the dollar amount of the plaintiffs' allowable income tax deduction was limited by IRC (1954), § 170(e), to $66, the plaintiffs' allocated cost basis in the property given to the water district.

 Under the provisions of Oregon's Personal Income Tax Act of 1969, particularly ORS 316.007 and 316.062, the pertinent parts of IRC (1954), § 170 (allowing deductions for charitable contributions), are applicable herein. Subsection (c) (1) provides for deduction of the value of a contribution to a municipal corporation. The parties agreed that the Beverly Beach Water District qualified as such. *See* ORS chapter 264.

 The significance of the "donative intent" required for deduction of a gift for income tax purposes has been well stated in the trial brief of defendant's counsel, citing *Commissioner v. Duberstein,* 363 US 278, 80 S Ct 1190, 4 L Ed2d 1218, 60-2 USTC ¶ 9515, 5 AFTR2d 1626 (1960). In a factual situation requiring a determination of a receipt as gift or income, the case lays down the rule as follows: The value of a gift may be excluded from gross income only if the gift proceeds from a "detached and disinterested generosity" or "out of affection, respect, admiration, charity or like impulses" and must be included as income if the claimed gift proceeds primarily from "the constraining force of any moral or legal duty" or from the "incentive of anticipated benefit, of an economic

nature." Such criteria are also applicable to a charitable deduction under IRC (1954), § 170. (*See Straumfjord v. Commission,* 3 OTR 69, 74 (1967).)

Defendant quotes from *Larry G. Sutton,* 57 TC 239, 243 (1971), where the court decided whether a conveyance of an easement was a charitable contribution:

> "Determining a taxpayer's incentive, motive, or purpose in making a gift is a factual problem. The inquiry, however, does more than probe the subjective attitude of the donor and the extent to which public-spirited and charitable benevolence prompted the transfer. The inquiry seeks to expose the true nature of the transaction: whether the 'gift' was made 'in expectation of the receipt of certain specific direct economic benefits within the power of the recipient to bestow directly or indirectly, which otherwise might not be forthcoming.' *Stubbs v. United States,* 428 F.2d 885, 887 (C.A.9, 1970)."

Defendant herein argues (Trial Memorandum at 3):

> "Mr. Brice had a subdivision. The subdivision needed water. If he had moved against the water district he would have lost the economic benefits of the water for his subdivision. It was essential to him to keep the water available for the subdivision and he benefited by having the water reservoir there. * * *"

The testimony in this case clearly shows that the relationship between the water district and the partnership was such that no economic benefit could have been conferred upon the partners by the water district in return for the transfer of the property. The partners could have obtained a return from the transfer if they had either forced the water district to ini-

tiate condemnation proceedings or if they had negotiated a sale with the water district.

Defendant contends that the benefit available was the continued supply of water to the subdivision. However, the water district had agreed prior to filing of the plat to provide water to the subdivision lots, and the water pipelines were already in place as a result of the individual efforts of Mr. Brice and his partner. There was no suggestion that the water supply would have been discontinued if the property transfer were not made. The court can find no economic benefit, direct or indirect, which would inure to the plaintiffs from the conveyance of this property. The testimony given in the case was clear and appeared to be straightforward, complete and guileless.

Defendant has raised the question whether the existence of the pump house prevented plaintiffs from developing the property on which it was situated. There is no evidence in the record to support such an inference. On the contrary, the partnership did not intend to develop the entire 67-acre tract at one time; the subdivision plat that was filed encompassed only the westerly 25 to 30 acres of the tract, situated north of the subject property. Mr. Brice testified that he and his partner had plans for future development of the eastern part of the tract but none for the subject property (most of which would have been uninviting to a purchaser and very expensive to improve).

There are important, highly useful cases involving the question of donative intent respecting an alleged charitable contribution, claimed as an income tax deduction, cited by the defendant, the principles of which are accepted and approved by this court, but each can be differentiated factually from the present suit. In those cases where a charitable deduction was denied, the taxpayer had an economic purpose or other

quid pro quo for making the contribution.[1] The cases granting charitable deductions have followed the rule that the existence of incidental benefits flowing back to the donor will not disqualify a contribution prompted by a predominantly charitable or donative purpose, the major benefits of which inure to the general public.[2]

The second aspect of donative intent in this suit relates to defendant's contention involving dubiety of plaintiffs' title in the subject property because of an alleged adverse possession by the water district. This is stated in defendant's Order No. I-75-22, at 2, as follows:

> "The fact that the district was utilizing (known to and without the prior owner's permission) this part of the partnership property for a pump and reservoirs and such fact was also known by the partners at the time of purchase, constitutes, in my judgment enough evidence to establish the possibility of the adverse user claim by the water district and to negate the contention of the Taxpayers that a gratuitous donative interest existed. * * *"

 It appears that defendant had been erroneously informed on this point. If it were shown that

---

[1] Stubbs v. United States, 428 F2d 885 (9th Cir 1970), 70-2 USTC ¶ 9468, 26 AFTR2d 70-5010, cert denied, 400 US 1009, 91 S Ct 567, 27 L Ed2d 621 (1971); United States v. Transamerica Corp., 392 F2d 522 (9th Cir 1968), 68-1 USTC ¶ 9279, 21 AFTR2d 983, aff'g 254 F Supp 504 (ND Cal 1966), 18 AFTR2d 5226; Larry G. Sutton, 57 TC 239 (1971); Harold E. Wolfe, 54 TC 1707 (1970); Jordon Perlmutter, 45 TC 311 (1965); Harold DeJong, 36 TC 896 (1961), aff'd, 309 F2d 373 (9th Cir 1962), 10 AFTR2d 5863.

[2] Citizens & Southern Nat'l Bank of South Carolina v. United States, 243 F Supp 900 (WD SC 1965), 65-2 USTC ¶ 9618, 16 AFTR2d 5538; Singer Co. v. United States, 449 F2d 413 (Ct Cl 1971), 71-2 USTC ¶ 9685, 28 AFTR2d 71-5822; Toole v. Tomlinson, 63-1 USTC ¶ 9267, 11 AFTR2d 847 (MD Fla 1963); and Morris N. Scharf, 42 P-H Tax Ct Mem 73-1200 (1973), 32 CCH Tax Ct Mem 1247 (1973).

the water district had acquired title to the property by adverse possession, plaintiffs, of course, could not claim a deduction for contribution of the property. In order to establish title by adverse possession, there must be evidence that there has been an actual, open, notorious, exclusive, continuous and hostile possession of the premises for the full statutory period of ten years (ORS 12.050) under claim of right or color of title. *Scott v. Elliott*, 253 Or 168, 451 P2d 474 (1969). Although the water district had located its pump house on plaintiffs' property, and that pump house has been continuously present for the statutory period, substantial evidence at the trial negated acquisition of title by adverse possession because the water district made no claim of right or title to the property. To the contrary, there has been a continuing acknowledgment of the title of Mr. Brice and his predecessor in the property by the water district board. The testimony was corroborated by defendant's own witness, a long-time officer of the water board from its inception in 1948 or 1949. As stated by the Oregon Supreme Court in *Sertic v. Roberts,* 171 Or 121, 134, 136 P2d 248, 253 (1943):

"* * * If, at the time one enters, or afterward, he does not claim the title himself, but acknowledges title of another, his possession must be taken as an entry or holding in subordination to the title of the person whose right he acknowledges. * * *"

The testimony indicates that this was in fact the case. Therefore, the court finds no merit in defendant's contention that the water district had acquired title to the property by adverse possession.

The charitable contribution in this case was one which, prima facie, should have alerted a competent state income tax auditor, and it did. But it appears to this court that the defendant's hearing officer did not have the benefit of a full record at the time of the

hearing on January 8, 1975. The preponderance of the evidence before this court negates the understandable fears of defendant of a business or economic motive for plaintiffs' gift to the water district and also destroys any shred of a claim of adverse possession of subject property by the water district.

In the view of the court, the failure by plaintiffs to act with respect to the trespass of the water district before 1970 was mere inertia. The 1970 gift may have been prompted chiefly by the tax advantages for property and income tax purposes. Internal Revenue Code of 1954, § 170, encourages bona fide charitable contributions by granting and aiding tax deductions. Such gifts are not disallowed because of the tax advantages.

Defendant's final contention is that if the partners are allowed any deduction pursuant to IRC (1954), § 170, it must be limited to their cost basis in the subject property, $66. This argument is set out in defendant's Trial Memorandum, at 5:

> "Mr. Brice was in the real estate business and marketing the property in the subdivision. If this property were sold in the ordinary course of his business, it would have been subject to ordinary income tax and would fall within the rule laid out in § 170(e), IRC which states that such contributions are limited to the basis in the property rather than the fair market value. * * *"

Does IRC (1954), § 170(e), limit the appreciation element under the facts of this suit? The basic rule is that a charitable gift may be made in the form of property other than money, in which event the amount of the deduction is determined by the fair market value of the property at the time of the contribution. Treas Reg § 1.170-1(c). Most exceptions to this rule relate to the recapture of depreciation or exclusion of economic appreciation. In the present

suit, particular consideration must be given to the exception to the basic rule in the case of property held for sale to customers (such as plaintiffs' platted lots). *See* IRC (1954), § 170(e) (1) (A); 5 Mertens, *Law of Federal Income Taxation* § 31.03(2). However, the testimony shows that the subject property had been owned and held in its original condition for several years; it was not developed, subdivided or platted; it was excess raw land, not for sale at the time of the gift, and would have continued as such for an indefinite number of years if the gift had not been made.

 Courts and tax administrators recognize that a real estate developer may hold land for immediate sale (an inventory) and also as a capital investment (including a long-term investment). The subject property is deemed to fall in the latter category, outside the restrictions of IRC (1954), § 170(e). *Charles E. Mieg,* 32 TC 1314 (1959); *Ben I. Seldin,* 28 CCH Tax Ct Mem 1215 (1969), P-H Tax Ct Mem 69-1324 (1969).

Defendant's Order No. I-75-22 is set aside and held for naught. Plaintiffs' 1970 personal income tax return shall be accepted as filed. The defendant shall refund any taxes which have been paid in excess of those found payable under this opinion, with statutory interest thereon. Plaintiffs are awarded their statutory costs.