DECISION
Plaintiff appeals Defendant's Notices of Deficiency Assessment, dated June 19, 2007, for tax years 2002 and 2003. A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on Tuesday, February 5, 2008. Plaintiff appeared on her own behalf. James Wallace, Assistant Attorney General, appeared on behalf of Defendant. Cameron Campbell (Campbell), Senior Tax Auditor, testified on behalf of Defendant.
Plaintiff's Exhibits E-1 through E-17 and E-19 through E-22 were offered and received by the court without objection. Defendant's Exhibits A through F were offered and received by the court without objection.
 I. STATEMENT OF FACTS
On February 26, 1996, Plaintiff filed Articles of Incorporation with the State of Oregon Corporation Division for House of the Living Waters (House). (Ptf's Ex E 2-2.) The application stated that House is a religious corporation with members and listed Plaintiff as the registered agent. (Id.) The application stated that the distribution of assets on dissolution or final *Page 2 
liquidation was to Plaintiff.[1] (Id.) Plaintiff testified that, in addition to herself as President and Director, Joyce Parnell was an "active director from 1996 to late 2005 or early 2006."
On March 26, 2004, the Internal Revenue Service (IRS) acknowledged receipt of House's application for exemption from federal income tax. (See Def's Ex F-5.) In response to the IRS request for additional information, House's Articles of Incorporation were amended on August 5, 2004. (Ptf's Ex E 2-4.) The first amendment stated that House "is organized exclusively for charitable, religious, educational, and scientific purposes, within the meaning of the section 501(c)(3) * * *." (Ptf's Ex E 2-5.) The second amendment stated that "[n]o part of the net earnings of the organization shall inure to the benefit of, or be distributable to its members, trustees, officers, or other private persons * * *." (Id.) The third amendment stated that "[u]pon the dissolution of the organization, assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code * * *." (Id.)
After an exchange of information, the IRS notified Plaintiff on September 29, 2004, that House's application was granted and House was "exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code." (Def's Ex F-32.) In addition, the IRS concluded that House was a "private foundation within the meaning of section 509(a) of the Code." (Id.) The effective date of the exemption was February 26, 1996. (Id.)
In 2002, Plaintiff transferred shares of Intel stock to House. On her federal and state income tax returns, Plaintiff claimed a charitable contribution in the amount of $84,840 for tax year 2002. (Def's Ex B-32.) House sold 4,200 shares of Intel stock in 2002 and 3,024 shares of Intel stock in 2003. (See Def's Exs B-38, C-44, C-52, C-53, and F-12 to F-23.) Because the *Page 3 
Intel stock was transferred to House, Plaintiff did not report dividends received in tax year 2002 or proceeds from the sale of those shares of Intel stock on her 2002 and 2003 federal and state income tax returns. After auditing the state tax returns, Campbell concluded that the transfer of Intel stock was not a charitable contribution because Plaintiff "did not relinquish control over the stock." (Def's Exs B-32, and A-2.) Campbell testified that if House was not exempt then "no deduction can be allowed." Campbell's proposed audit adjustments increased Plaintiff's taxable income for dividends in 2002 and for capital gain from the stock sales in 2002 and 2003. (Def's Exs B-58, B-60, C-25, and C-26.) The charitable contribution for the 2002 transfer of the Intel stock was reduced. (Def's Ex B-33.)
For tax years 2002 and 2003, Plaintiff claimed deductions for the operating expenses of House on her federal form Schedule C. (Def's Exs B-32, C-27, and C-28.) Those same expenses were reported on the 2002 Form 990 (Return of Foundation) and 2003 Form 990-PF (Return of Private Foundation) filed for House. (Id.) Campbell concluded that the "expenditures * * * should not be reported on Schedule C but may potentially be deductible as charitable contributions." (See Def's Ex A-2.) He testified that the timing of when the "charitable contribution or deduction is allowed" is tied to "when the funds are used and the actual use of the funds." Campbell disallowed Plaintiff's claimed travel expenses to Hawaii and the installation cost of a volleyball pit in the backyard of Plaintiff's personal residence in tax year 2002. (Def's Ex B-33.) He testified that those expenditures were "a personal benefit to" Plaintiff. In tax year 2003, Campbell disallowed claimed deductions for Campus Ministries and Future Ministries. (Def's Ex C-27, C-28, and C-56.) He testified that the funds spent for Campus Ministries were directed to one individual, Plaintiff's son, and the items, such as furniture, linens, and other items purchased for Future Ministries were "never placed in service *Page 4 
and remained in" the control of Plaintiff. For each tax year, Defendant assessed a 20 percent understatement penalty. (Def's Exs B-63, and C-30.)
Plaintiff challenged all of Campbell's proposed adjustments. Plaintiff testified that House is a non-profit corporation operating since 1996. She testified that House maintains its own bank account and that there are two directors. Because the IRS "concluded after its audit" that House was a private foundation exempt from income tax, Plaintiff does not understand why the State of Oregon is not "treating House the same." In response to why the operating expenses in the same amount were reported on House's tax return and claimed by Plaintiff as business expenses on form Schedule C, Plaintiff testified that she uses some equipment, e.g. the computer, for both House publications and Terah Press publications. She testified that she did not know how to allocate the expenses and Campbell told her that "she could not do that."
Plaintiff testified that the purpose of her trips to Canada and Hawaii was to find a property where she could continue carrying out her work with God, including working on books, writing a movie, and meeting with others. She testified that while she was in Hawaii she posted decrees and worked with her daughter on children's books. Plaintiff also testified that House has a website that is used to communicate God's words to people, and she submitted examples of God's prophecies, trip itinerary, and related documents. (See Ptf's Exs E 7 to E 11.)
In 2002, House funded the construction of a volleyball pit at Plaintiff's personal residence. (Def's Ex B-33.) Plaintiff testified that the volleyball activity brought street kids and friends of her children to her so that she could help them identify what God had in store for them. She testified that during the "good weather" the volleyball pit was used three times a week and "not at all during winter." Plaintiff testified that her family did not use the volleyball pit for their *Page 5 
own pleasure. She further testified that it was "not something that anyone would want to buy, and it did not help sell the house."
Plaintiff testified that in 2003 her son Jason moved to Eugene to further his mother's ministry with the Asian Christian fellowship. She testified that Jason worked on a "drama," helped with the leadership, and provided an opportunity for his mother to "enter into the kids' lives."
Plaintiff concluded her testimony by stating that House is an educational foundation and all the money was "well spent to accomplish the Foundation's goals."
 II. ANALYSIS
Plaintiff challenges Defendant's proposed audit adjustments to claimed charitable contributions on her 2002 and 2003 Oregon personal income tax returns. The State of Oregon adopted the federal definitions pertaining to taxable income as the measure of a taxpayer's Oregon taxable income. ORS 316.007; 316.048.[2] Internal Revenue Code (IRC) section 501 provides that certain organizations shall be exempt from taxation.[3]
Specifically, IRC section 501(c)(3) exempts "[c]orporations * * * organized and operated exclusively for religious * * * purposes[.]" Because the deductibility of both House's expenses and Plaintiff's charitable contribution is tied directly to whether House qualifies as an IRC 501(c)(3) exempt organization, the court will begin its inquiry there.
A. Exemption under IRC section 501(c)(3)
For an organization to be exempt under IRC section 501(c)(3), it must meet specific requirements. Those requirements are arranged into two tests: the organizational test and the *Page 6 
operational test. The applicable Treasury Regulation provides that "[i]f an organization fails to meet either the organizational test or the operational test, it is not exempt" under IRC section 501(c)(3). Treas Reg § 1.501(c)(3)-(1)(a)(1) (as amended in 1990) (emphasis added).
1. Organizational Test
Generally, an organization is considered exclusively organized for an exempt purpose if its articles of organization both (a) limit the purposes to one or more exempt purposes, and (b) do not expressly empower the organization to engage in activities which are not in furtherance of an exempt purpose. Treas Reg § 1.501(c)(3)-(1)(b)(1)(i). The organization's purposes "may be as broad as, or more specific than, the purposes stated in [IRC] section 501(c)(3)[,]" but may be no broader in order to be considered organized exclusively for one or more exempt purposes. Treas Reg §§ 1.501(c)(3)-(1)(b)(1)(ii), (iv). "Religious" is considered an exempt purpose under both the IRC and the applicable Treasury Regulation. IRC § 501(c)(3); Treas Reg § 1.501(c)(3)-(1)(d)(1)(i)(a).
a. Articles of Incorporation
An organization is not considered to be "organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose." Treas Reg § 1.501(c)(3)-1(b)(4). An organization fails to satisfy this requirement if its articles fail to specify that, upon dissolution, the organization's assets will be distributed for one or more exempt purposes, or for another qualifying purpose, including to the Federal Government, to a State or local government, or for a public purpose. Id. The Treasury Regulation specifically states that "an organization does not meet the organizational test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders."Id. *Page 7 
The law of the state in which an organization is created controls in the construction of the terms of its articles. Treas Reg § 1.501(c)(3)-1(b)(5). State law could be used as a substitute for a dissolution clause but only if that law meets the IRC's requirements.See id. Oregon law defines "nonprofit corporation" as "mutual benefit corporations, public benefit corporations and religious corporations." ORS 65.001(31). Only the definition of "public benefit corporation" restricts the distribution of assets upon dissolution. ORS 65.001(37). The definition of "religious corporation" makes no mention of asset distribution. ORS 65.001(39). For a religious corporation organized in Oregon to qualify for exemption under IRC section 501(c)(3), its articles of organization must include a dissolution clause that meets the Treasury Regulation section 1.501(c)(3)-1(b)(4) requirements.
In the present case, Plaintiff filed House's Articles of Incorporation with the State of Oregon on February 26, 1996. (Ptf's Ex E 2-2.) That document listed Plaintiff's name after "ARTICLE 6: Distribution of assets on dissolution or final liquidation:[.]" (Id.) In August 2004, Plaintiff amended the Articles of Incorporation by adding several clauses, including a dissolution clause. (Ptf's Ex E 2-4, and E 2-5.)
Applicable IRS revenue procedures provide that if an organization makes a "nonsubstantive amendment" to its enabling instrument,i.e. its articles of organization or incorporation, the organization's exemption under IRC section 501(c)(3) will ordinarily be recognized as of the date of formation. Rev Proc 84-47 § 2.03 (1984). An example of a nonsubstantive amendment is "the addition of a dissolution clause where the activities of the organization prior to the ruling or determination are consistent with the requirements for exemption." Rev Proc 84-46 § 13.01 (1984) (as amplified by Rev Proc 84-47).
Plaintiff's amendment to House's Articles of Incorporation is "nonsubstantive" under Revenue Procedure 84-46 section 13.01, as amplified by Revenue Procedure 84-47, provided the *Page 8 
organization's activities prior to the ruling or determination are consistent with the exemption requirements. Plaintiff's trial testimony and the documentary evidence support a finding by the court that House's activities prior to the IRS determination were consistent with the exemption requirements. Defendant did not allege that House's activities prior to 2004 were inconsistent with the exemption requirements. Therefore, under Revenue Procedure 84-47 section 2.03, House's IRC section 501(c)(3) exemption would ordinarily be recognized as of the date of formation, February 26, 1996. (See Ptf's Ex E 2-2.)
b. Exemption as a Private Foundation
IRC section 501(c)(3) organizations are presumed to be "private foundations" unless they meet one of four exceptions in IRC section 509(a). IRC § 508(b). Unless exempted under IRC section 508(c), organizations qualifying under IRC section 501(c)(3) are subject to the notice requirement in IRC section 508(a), which requires new organizations to notify the IRS "within 15 months from the end of the month in which the organization was organized." Treas Reg § 1.508-1(a)(2).[4]
The IRS reviewed Plaintiff's application, including the amendments to House's Articles of Incorporation and, on September 29, 2004, notified Plaintiff by letter of House's exemption as a private foundation under IRC sections 501(c)(3) and 509(a), effective February 26, 1996. (Def's Ex F-32.) The IRS letter states that "[c]ontributions to [House] are deductible under section 170 of the Code. [House is] also qualified to receive tax deductible bequests, devises, transfers or gifts under [IRC] sections 2055, 2106 or 2522 of the Code." (Id.) Therefore, House *Page 9 
was qualified to receive tax deductible contributions, and contributors could take corresponding deductions under IRC section 170, as of February 26, 1996.
The court follows the IRS determination that House was organized for an exempt purpose under IRC section 501(c)(3) as of February 26, 1996.
2. Operational Test
The second requisite test for IRC section 501(c)(3) exemption concerns an organization's operations. An organization is only regarded as operating exclusively for one or more exempt purposes under IRC section 501(c)(3) if specific conditions are met. Treas Reg § 1.501(c)(3)-1(c). First, the organization must engage "primarily in activities which accomplish one or more of such exempt purposes specified in [IRC] section 501(c)(3)." Treas Reg § 1.501(c)(3)-1(c)(1). Second, the organization will not be considered as operating exclusively for one or more exempt purposes "if its net earnings inure in whole or in part to the benefit of private shareholders or individuals." Treas Reg § 1.501(c)(3)-1(c)(2). Third, it may not be an "action organization,"i.e. one which is involved in influencing legislation or otherwise participates in politics. Treas Reg §§ 1.501(c)(3)-1(c)(3)(i) to (iv). With regard to the first requirement, Treasury Regulation section 1.501(c)(3)-1(d) specifies that "exempt purposes" include: religious, charitable, scientific, testing for public safety, literary, educational, and prevention of cruelty to children or animals. That section further specifies that the organization must serve a public rather than a private interest. Treas Reg § 1.501(c)(3)-1(d)(ii).
At trial, Plaintiff testified about House's activities and operations: travel to Canada and Hawaii as ordained and decreed by God to do symbolic work; work in Hawaii on books and search for a location to use for making movies and meeting with people; use of a website to tell people what is in God's heart, to post prophetic words from God, and to warn the public about impending disasters; construction of a volleyball court so street kids would have a safe place to *Page 10 
play and talk about God; and work with street kids to give them each a prophetic word and symbol from God. Plaintiff also submitted exhibits that included trip itinerary and related documents and prophecies she received from God. (See Ptf's Exs E 7 to E 11.)
With respect to the three parts of the operational test, "religious" is one of the exempt purposes in 501(c)(3), and both Plaintiff's testimony and the documentary evidence support the conclusion that House is engaged primarily in activities that focus on a religious purpose as required by Treasury Regulation section 1.501(c)(3)-1(c)(1). Second, as discussed above under the organizational test, the "nonsubstantive" amendment to House's Articles of Incorporation, which included the addition of a dissolution clause, permits House to be recognized as exempt under IRC section 501(c)(3) as of the date of formation.See Rev Proc 84-47 § 2.03. That amendment also removed the possibility that net earnings would inure to the benefit of private shareholders or individuals, as prohibited by Treasury Regulation section 1.501(c)(3)-1(c)(2). Third and finally, there is no evidence that House is an "action organization," a purpose that under Treasury Regulation section 1.501(c)(3)-1(c)(3)(i)-(ii) would preclude House from being considered organized for an exempt purpose under IRC section 501(c)(3). Therefore, based on Plaintiff's testimony, the documentary evidence, and the applicable law, the court concludes, as did the IRS, that House was operated for an exempt purpose under IRC section 501(c)(3) as of February 26, 1996, its date of formation.
3. Deductibility of House's Operating Expenses in 2002 and 2003
In the present case, Defendant does not directly challenge House's operations but rather argues that House was not a qualifying IRC501(c)(3) exempt organization in 2002 and 2003. Defendant challenges deductions claimed by Plaintiff for House's operating expenses on her form Schedule C, and deductions taken on House's Form 990 (2002) and Form 990-PF (2003). (See Def's Exs B-32, C-27, and C-28.) *Page 11 
This court has previously stated that Oregon ultimately relies on federal definitions to determine an individual's Oregon tax liability.Curtis v. Dept. of Rev., 17 OTR 414, 418 (2004) (Curtis). The court is additionally aware that, although "Oregon [tax] liability can be established independently from any federal enforcement action," it was the intent of the Oregon legislature "to make the Oregon personal income tax law identical in effect to the provisions of the federal [IRC] relating to the measurement of taxable income of individuals * * *."Curtis, 17 OTR at 418 (citing Detrick v. Dept. of Rev., 311 Or 152, 156,806 P2d 682 (1991)); ORS 316.007.
The court has already determined, based on the evidence, that House meets both the organizational and operational tests in Treasury Regulation section 1.501(c)(3)-1(a)(1) as required for exemption under IRC section 501(c)(3). Based on those determinations and the discussion above regarding the IRS's recognition of House as exempt effective February 26, 1996, the court concludes that House's exemption as a private foundation under IRC sections 501(c)(3) and 509(a) was effective February 26, 1996. (See Def's Ex F-32.) The court will not engage in an inquiry as to whether, for 2002, the trip to Hawaii or the volleyball pit were of a personal benefit to Plaintiff, nor whether the 2003 expenses related to Campus Ministries and Future Ministries were appropriate operationally, as those challenges would need to be brought against House rather than against Plaintiff. The court concludes that, to the extent deductions on House's Form 990 (2002) and Form 990-PF (2003) were also deducted by Plaintiff on her Schedule C, those items are not deductible by Plaintiff personally for either tax year. (See Def's Exs B-32, C-27, and C-28.)
B. Deductibility of Charitable Contributions and Gifts under IRCsection 170
The requirements for deductibility of a charitable contribution or gift for income tax purposes are contained in IRC section 170 and the relevant treasury regulations. Generally, and as described in more detail below, for a charitable contribution or gift to be deductible under *Page 12 
IRC section 170, certain qualifications must be met by both the organization that is receiving the contribution or gift and the donor who is making the contribution or gift. See IRC § 170(c)(2); Treas Reg §§ 1.170-1 to-3.
1. Qualifying Organization
Charitable contributions and gifts are deductible under IRC section 170(a) subject to specific limitations and requirements detailed in that section and further explained in Treasury Regulation sections 1.170-1,-2, and-3. A deductible charitable contribution or gift may be made to a "corporation, trust, or community chest, fund, or foundation" provided the recipient is "organized and operated exclusively for religious * * * purposes[,] * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual[,]" and the recipient is not otherwise disqualified from tax exemption under IRC section 501(c)(3). IRC § 170(c)(2).
House's exemption as a private foundation under IRC sections 501(c)(3) and 509(a), effective February 26, 1996, was recognized by the IRS in its letter dated September 29, 2004. (Def's Ex F-32.) The letter, addressed to applicant House, states in pertinent part as follows:
 We are pleased to inform you that upon review of your application for tax exempt status we have determined that you are exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code. Contributions to you are deductible under section 170 of the Code. You are also qualified to receive tax deductible bequests, devises, transfers or gifts under sections 2055, 2106 or 2522 of the Code. Because this letter could help resolve any questions regarding your exempt status, you should keep it in your permanent record."
(Id.)[5] *Page 13 
House met the requirements of IRC section 170(c)(2) and the applicable Treasury Regulations and was qualified to receive tax deductible contributions as of February 26, 1996. Contributions by Plaintiff would, therefore, be allowable as deductions under IRC section 170 because they were made to an exempt organization.
2. Donative Intent
Although IRC section 170(c) is entitled "Charitable contribution defined[,]" and includes the requirements listed above, the term "charitable contribution or gift" is not further defined in section 170. When interpreting this section, courts including this one have made a separate inquiry into the intent of the person or entity making the contribution or gift. This court has specifically acknowledged the "significance of the `donative intent' required for deduction of a gift [or charitable contribution] for income tax purposes * * *." Brice v.Dept. of Rev., 6 OTR 548, 552, WL 1472 at *2 (1976) (Brice) (referring to the case of Comm'r v. Duberstein, 363 US 278, 80 S Ct 1190,4 L Ed 2d 1218 (1960) (Duberstein)); e.g., Miller v. IRS, 829 F2d 500, 502-03
(1987) (discussing tests courts have applied in determining whether a payment is a contribution or gift under IRC section 170). The United States Supreme Court in Duberstein defined a gift in terms of whether it either "proceeds from a `detached and disinterested generosity' or `out of affection, respect, admiration, charity or like impulses[,]' * * *or proceeds primarily from `the constraining force of any moral or legal duty' or from the `incentive of anticipated benefit, of an economic nature.'" Brice, 6 OTR at 552-53, WL 1472 at *2 (citingDuberstein, 363 US at 285) (emphasis added). Because the controlling factor is the intent with which the contribution is made, the latter would not be deductible by the donor if they lacked the proper donative intent. See Duberstein, 363 US at 285-86; id. This court inBrice clarified that the Duberstein "gift" criteria "are also applicable to a charitable deduction under IRC [section] 170." Brice, 6 OTR at 553, WL 1472 at *2. *Page 14 
3. Deductibility of Intel Stock Transferred in 2002
Defendant argues that Plaintiff's transfers of Intel stock in 2002 and 2003 from personal accounts into an account in House's name are not deductible charitable contributions. (See Def's Ex A-2.) At trial, Campbell testified that, because House's 1996 Articles of Incorporation state that all assets would revert back to Plaintiff in the event of dissolution, the transfer of stock to an account that Plaintiff "was in charge of" did not result in complete relinquishment of control by Plaintiff and, therefore, the gift was not completed and is not deductible. In addition to stating that the transfer of stock is not a deductible charitable contribution, Defendant's Conference Decision Letter dated June 19, 2007, also states that "[t]he act ofselling the stock does not result in charitable contributions because the proceeds from the sale remained under [Plaintiff's] control." (Def's Ex A-2) (emphasis added). Both the Conference Decision Letter and Campbell in his testimony state that proceeds from the stock transfer that were used later for charitable expenditures would be deductible at that time. (Id.)
Exhibit documents submitted by Defendant, which appear to have been originally sent to the IRS by Plaintiff in response to an August 17, 2004, IRS letter requesting additional information, provide information about the transfers of Intel stock to House. (See Def's Ex F-6 to F-23.) The documents pertaining to the stock transfer begin with a cover sheet that states: "Response to Items #4 5[6] — 2002 Stock Transfer to Organization: See the following records for documentation regarding the stock transfer to the organization in 2002." (Def's Ex F-12.) The documents include a communication from Kevin Pate to Bidwell Co. dated November 27, 2002, that states as follows: "Please transfer 4200 shares of INTC from Bidwell account * * * (joint Kevin Pate Peg Pate account) to Bidwell account * * * (House of the Living Waters *Page 15 
account)." (Def's Ex F-13.) The documents, which include Bidwell account print-outs with corresponding account numbers, state that the fair market value for the Intel (INTC) stock on November 27, 2002, was $20.20 per share for a total fair market value of $84,840.00. (Def's Ex F-14, F-16.) The print-out for House's Bidwell account states in part as follows: "HOUSE OF THE LIVING WATERS [/] PEG TERAH PATE, PRESIDENT * * *." (Def's Ex F-15.)
Similar documentation was submitted to the IRS, and included in Defendant's exhibits, for Intel stock transfers made in 1999 and 2000. (Def's Ex F-17 to F-23.) For the 2000 transfer, the documents include an "Account Summary" for Kevin Pate's account that shows a transfer of 2,250 shares and describes the transaction as "INTEL CORPORATION GIFT — HOUSE OF LIVING WATERS." (Def's Ex F-20.) Although no "Account Summary" was included in the exhibits for the 2002 or 2003 transfers, Plaintiff's testimony at trial supports the documentation in Defendant's exhibits.
As discussed above, IRC section 170 deductibility as a charitable contribution or gift requires both that House be a qualifying organization and that Plaintiff have the proper "donative intent" for a charitable contribution or gift. See IRC § 170(c)(2); Treas Reg §§ 1.170-1 to-3; Brice, 6 OTR at 552, WL 1472 at *2. The court has already determined that House met the requirements of IRC section 170 and the applicable Treasury Regulations, and that, therefore, donors such as Plaintiff could take corresponding deductions under IRC section 170 as of February 26, 1996.
Regarding donative intent, although Plaintiff presented little evidentiary documentation, the documents contained in Defendant's exhibits support an intent by Plaintiff to give the Intel stock to House by transferring it from a personal account to House's account. (See Def's Ex F-6 to F-23.) Plaintiff's candid, forthright testimony regarding the stock transfers and her work with *Page 16 
House, combined with the evidentiary documentation, are sufficient to support the donative intent required for deductibility under IRC section 170 as interpreted by the applicable case law.
Based on the IRS determination that, as of February 26, 1996, House was qualified to receive tax deductible contributions and contributors could take corresponding deductions under IRC section 170, and the determination that Plaintiff had the requisite donative intent in making the contribution, the court concludes that Plaintiff is entitled to a charitable deduction on her state income tax return for tax year 2002 for the Intel stock transferred to House.
 III. CONCLUSION
After careful review of the testimony and evidence, the court concludes that under IRC section 501(c)(3), House was organized and operated for an exempt purpose as of February 26, 1996. House's exemption as a private foundation under IRC sections 501(c)(3) and509(a) was effective February 26, 1996. Because House was an exempt organization and Plaintiff had the requisite donative intent under IRC section 170, Plaintiff is entitled to a charitable deduction on her Oregon personal income tax return for tax year 2002 for the Intel stock transferred to House. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff is entitled to a charitable deduction for tax year 2002 for the Intel stock transferred to House; and *Page 17 
IT IS FURTHER DECIDED that items claimed as deductions on House's Form 990 (2002) and Form 990-PF (2003) cannot be deducted by Plaintiff on her state income tax return for tax years 2002 or 2003.
Dated this _____ day of April 2008.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onApril 21, 2008. The Court filed and entered this document on April 21,2008.
[1] Plaintiff changed her name from Peg Terah Pate, which was the name stated on the application, to Terah Noelle.
[2] All references to the Oregon Revised Statutes (ORS) are to 2001.
[3] All references to the Internal Revenue Code (IRC) are to 2000.
[4] Private foundations are generally subject to the notice requirement in IRC section 508(a), per section 508(c)(1)(B). However, IRC section 508(c)(2) grants the IRS the authority to exempt other organizations, and Revenue Procedure 84-47 section 4 further explains the Commissioner's discretion to grant extensions of time for satisfying the notice requirement of IRC section 508(a). Even though Plaintiff's Form 1023 was filed more than 15 months from the end of the month in which House was organized, the IRS granted House an exemption under IRC section 501(c)(3). (See Ptf's Ex E 2-2; Def's Ex F-32.)
[5] The court notes that on the "Corporation Division, Nonprofit Services" section of the Oregon Secretary of State's website, under IRC "501(c)(3) Federal Income Tax Exemption," the following statement is made: "Forming a nonprofit organization does not guarantee tax-exempt status. The Internal Revenue Service makes determinations regarding the federal tax-exempt status of nonprofit organizations. To obtain tax-exempt status you must apply to the Internal Revenue Service TE/GE Division." Oregon Secretary of State, Corporation Division, Nonprofit Services, http://www.filinginoregon.com/business/nonprofit_information.htm (last visited Apr 21, 2008).
[6] "Items #4 5" refers to the IRS's numbered requests for additional information contained in the letter to Plaintiff dated August 17, 2004. (Def's Ex F-6, F-7.) *Page 1