IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

FRANCIS G. STUCKART,           )
                                          )
          Plaintiff,              )    TC-MD 130430C
                                          )
          v.                      )
                                          )
DEPARTMENT OF REVENUE,     )
State of Oregon,                )
                                          )
          Defendant.        )    **FINAL DECISION**

The court entered its Decision in the above-entitled matter on February 28, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

This matter is before the court on cross-motions for summary judgment. Plaintiff appeals Defendant's Notice of Deficiency dated May 22, 2013, for the 2011 tax year. The parties submitted stipulated facts on October 3, 2013. Plaintiff submitted his motion for summary judgment on November 1, 2013. Defendant submitted its cross-motion for summary judgment on November 4, 2013, to which Plaintiff submitted a response on November 19, 2013. Robert L. Armstrong, PA, appeared on behalf of Plaintiff. Michael Phillips, auditor, appeared on behalf of Defendant.

## I. STATEMENT OF FACTS

In April 2011, Plaintiff donated a house to Catholic Community Services Foundation, a recognized charity. (Stip Facts, ¶¶ 1, 6, 8.) Because the house was worth $115,000 and was subject to a $48,554 mortgage that the charity paid off, the parties agree the value of Plaintiff's charitable contribution was $66,446. (*See id*., ¶¶ 3, 7, 9.) Plaintiff claimed a 2011 charitable

contribution deduction of $17,149, an amount equal to 50 percent of his adjusted gross income. (*Id.*, ¶ 4; *See* Ptf's Compl at 9.)

The parties stipulated that Plaintiff's basis in the house was $79,427, "as reported by [Plaintiff] on federal form 8283[.]" (Stip Facts, ¶ 5.) However, in his motion for summary judgment, Plaintiff included without explanation a table listing his basis as $93,251. (Ptf's Mot Summ J at 1.) Then, in his response to Defendant's cross-motion, Plaintiff stated that "[t]he adjusted basis of the residence after reduction of depreciation allowed was $118,251." (Ptf's Resp at 1.) Plaintiff attached to that response a worksheet and a spreadsheet showing his basis calculations, and an undated, single-page "Listing of Work Performed." (*Id*. at 5-7, 9.) His worksheet and spreadsheet show an adjusted basis calculated by addition of $88,889 in improvement costs to the purchase price, less depreciation. (*Id*. at 5-7.)

Plaintiff reports having previously taken $36,176 in depreciation on the house in connection with its use as a rental property. (*See* Ptf's Resp at 1, 5; Def's Cross-Mot at 2.) Plaintiff's claim to have used the house as his personal residence for three of the five years immediately preceding the donation is supported by tax returns and W-2s listing the house address as his mailing address in 2008, 2009, and 2010. (Stip Facts, ¶ 14.)

Plaintiff requests the court "[t]o hold that [his] donation basis is correctly calculated and [that the] percentage of donation limitation is correctly applied." (Ptf's Compl at 1.) Defendant asks the court to uphold its Notice of Deficiency. (*See* Def's Ans at 1.)

## II. ANALYSIS

The two issues in this case are (1) whether Plaintiff must recognize gain from relief of his indebtedness in the house, and if so, how much; and (2) whether Plaintiff's charitable gift deduction is limited to 50 percent or 30 percent of his adjusted gross income.

A.      *Standard of Review for Summary Judgment*

The court's review of motions for summary judgment is guided by Tax Court Rule (TCR) 47. *Cf.* Preface, TCR-MD[1] (Regular Division rules "may be used as a guide to the extent relevant" where circumstances are not covered by Magistrate Division rules). Under TCR 47 C, the court shall grant a motion for summary judgment if the pleadings and documentary evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." A fact is material only when "under applicable law, [it] might affect the outcome of a case." *Frost v. Lane County Assessor*, TC-MD 111101N, WL 851227 at *3 (Mar 14, 2012), citing *Sidhu v. Dept. of Rev.*, 19 OTR 207, 212 (2007) (citations omitted). To show that a genuine issue of material fact exists, the party adverse to the motion "has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial." TCR 47 C. The court views any evidence in the record in the light most favorable to the adverse party, and grants summary judgment if "no objectively reasonable juror" could return a verdict for that party. *See id.* In this case, both parties have raised the same issues in their summary judgment cross-motions regarding the exclusion of gain from the sale of the house and the percentage allowed as a charitable contribution deduction from such donation. Accordingly, the court will first view the evidence in the light most favorable to Plaintiff.

B.      *Applicability of Federal Law*

In keeping with the legislature's intent that Oregon personal income tax law be "identical in effect to the provisions of the Internal Revenue Code" unless specifically modified by statute, generally "[t]he entire taxable income of a resident of this state is the federal taxable income of

_____

[1] Tax Court Rules-Magistrate Division

the resident as defined in the laws of the United States[.]"  ORS 316.007(1); ORS 316.048.[2]  To the extent that federal statutes govern, their construction is to be guided by federal case law.  *See Julian v. Dept. of Rev.*, 17 OTR 384, 388 (2004).

The provisions of the Internal Revenue Code (IRC) pertaining to charitable deductions apply to Oregon income tax.  *Brice v. Dept. of Rev.*, 6 OTR 548, 552 (1976).  Likewise, the federal definition of gross income applies to the computation of Oregon state taxable income.  *See Negrete v. Dept. of Rev.*, 19 OTR 134, 136 (2006).  That definition includes "[i]ncome from discharge of indebtedness[.]"  IRC § 61(a)(12).

C.      *Deductions for Charitable Contributions*

IRC section 170(a)(1) allows a deduction for charitable contributions.  "Charitable contribution" includes any gifts to various qualifying entities and organization, public and private, including religious organizations.  IRC § 170(c).  For individuals contributing to churches, as was the case here, subsection (b)(1)(A)(i) of IRC section 170 generally limits the deduction to "50 percent of the taxpayer's contribution base," defined in subsection (b)(1)(G) as adjusted gross income.  However, in the case of contributions of capital gain property, "the total amount of contributions of such property which may be taken into account under subsection (a) for any taxable year shall not exceed 30 percent of the taxpayer's contribution base for such year."  IRC § 170(b)(1)(C).  There is an exception in the code to the 30 percent limitation if the donor makes a proper election.  IRC § 170(b)(1)(C), (e)(1)(B).  Capital gain property is gain resulting from the sale of a capital asset, defined in IRC section 1221(a) as "property held by the taxpayer."  The section 170 limitations are discussed more fully below.

/ / /

---

[2] Unless otherwise indicated, the court's references to the Oregon Revised Statutes (ORS) are to 2011.

D.    *Recognition of Gain from Discharge of Home Mortgage*

     1.    *Recapture of Depreciation Prior to Exclusion of Gain*

Although gain from the sale of a taxpayer's principal residence is generally excluded from gross income, any depreciation taken on the residence must first be recaptured before applying that exclusion.  IRC § 121(a), (d)(6).  Subject to certain exceptions, single taxpayers may exclude from their gross incomes up to $250,000 of gain from the sale of their personal residences, provided they lived on the premises for two out of the preceding five years and have not sold their home within the preceding two years.  IRC § 121(b)(1), (b)(3)(A).  However, taxpayers may not begin excluding gain until they have recognized an amount equal to any depreciation deducted on a previous year's return.  IRC § 121(d)(6).

By recognizing gain up to the amount they have claimed in depreciation, taxpayers rectify their accounting of their homes' values with the state.  When a depreciation allowance is claimed, the home is alleged to be worth less than its former basis.  *See* IRC § 167(a).  But where the sale of that home demonstrates that its value has not diminished as much as previously claimed (or has even increased), it is necessary that the tax benefit allowed to the taxpayer be "recaptured" by the state.  IRC § 121(d)(6) provides the mechanism for that to occur.

In the present case, viewing the record in the light most favorable to Plaintiff, Plaintiff's gain from the discharge of his mortgage by the charity must be recognized up to the amount his basis in the "sold" portion of the house has been reduced for depreciation.  *See* IRC 121(d)(6).

Letter Ruling 8625025, upon which Plaintiff relies, does not address recapture of depreciation and is therefore inapplicable. (*See* Ptf's Resp at 1.)

/ / /

/ / /

2.    *Basis in Donated Property to be Allocated Pursuant to IRC 1011(b)*

      a.    Gift of Mortgaged Property to be Treated as Bargain Sale

Where a taxpayer makes a charitable gift of encumbered property and is thereby relieved of indebtedness, that transaction is characterized as part gift and part sale, and the taxpayer's basis is allocated between the donated portion and the sold portion pursuant to IRC section 1011(b). Internal Revenue Code section 1011(b) states:

> "If a deduction is allowable under section 170 (relating to charitable contributions) by reason of a sale, then the adjusted basis for determining the gain from such sale shall be that portion of the adjusted basis which bears the same ratio to the adjusted basis as the amount realized bears to the fair market value of the property."

The "amount realized" in such a transaction is the amount of the indebtedness assumed by the charitable organization. *See*, *e.g.*, *Hodgdon v. Comm'r*, 98 TC 424, 426 (1992) (parties stipulated amount realized was indebtedness encumbering donated property).

      b.    No Genuine Issue of Fact as to Plaintiff's Basis in the House

In the present case, the parties have stipulated to the fair market value of the property ($115,000), the amount of indebtedness ($48,554), and Plaintiff's "basis" in the property ($79,427). Interpreting the evidence in the light most favorable to Plaintiff, the court will treat the amount stipulated as Plaintiff's "basis" in the house as his adjusted basis.[3] Furthermore, the parties do not dispute that Plaintiff claimed $36,176 in depreciation on the house. Because the parties have stipulated to these numbers, there is no genuine issue as to these material facts. TCR 47 C. Plaintiff's later pleadings incorporating a higher adjusted basis are unsupported by evidence in the record and therefore raise no genuine issue of material fact. As the party seeking

---

[3] Although the stipulated facts simply refer to the amount submitted by Plaintiff on Form 8283 as his "basis," box 1(f) of Form 8283 asks taxpayers to submit their "cost or adjusted basis" in the donated property. Plaintiff's adjusted basis in the house would incorporate a reduction to recapture any depreciation previously taken. If the stipulated basis were actually non-adjusted, Plaintiff would recognize more gain from the transaction. Defendant's computations also treat the stipulated basis as adjusted. (*See* Def's Cross-Mot at 3.)

affirmative relief, Plaintiff would bear the burden of proving at trial that his basis differs from the amount which he reported on his federal taxes and to which he stipulated. *See* ORS 305.427 (2013). Therefore, if Plaintiff intended to establish a higher adjusted basis at trial, it was up to him to put evidence in the record raising an issue of material fact on that point. *See* TCR 47 C.

The worksheets and list attached to Plaintiff's response are not admissible by ordinary rules of evidence because they are unsupported by an affidavit or declaration rendering someone responsible for the truth of their contents. Even though this court is not bound by statutory rules of evidence, in its discretion it governs its proceedings with the end of achieving substantial justice. ORS 305.501(4)(a). Here, there is no justification for waiving the evidentiary rules. The unattested worksheets, attached to a response dated November 19, 2013, are inconsistent with Plaintiff's summary judgment motion dated November 1, 2013, and both the worksheets and the motion are inconsistent with Plaintiff's stipulation dated October 3. Plaintiff has provided no explanation for the inconsistencies. Furthermore, the list of work performed does not assign dollar values to the items on it, and so would not suffice to challenge the stipulated adjusted basis even if admitted. Therefore, the court will look to the parties' Stipulated Facts for the value of Plaintiff's adjusted basis.

Applying the statutory allocation requirements to the stipulated values yields the following results. The ratio of the amount realized to the fair market value equals $48,554 divided by $115,000, which is 42.2 percent. *See* IRC 1011(b). Therefore, the transaction was 42.2 percent "sale" and 57.8 percent gift. The basis of the "sold" portion will reflect 42.2 percent of the $36,176 in depreciation claimed, or $15,266. Therefore, Plaintiff must recognize a capital gain of $15,266 for the charity's discharge of his mortgage. *See* IRC § 121(d)(6); *cf*. IRC § 121(a).

Because Defendant's calculations similarly show that Plaintiff must realize $15,266 in gain from the discharge of his mortgage, on that issue Defendant is entitled to prevail as a matter of law.

E.      *Limitation of Charitable Deduction*

Although gifts to charities described in IRC 170(b)(1)(A) are generally deductable up to 50 percent of a donor's adjusted gross income (calculated without regard to any net operating loss carryback), where the gift is of "capital gain property" the amount of the deduction is generally limited to 30 percent.  *See* IRC §§ 170(b)(1)(A), (b)(1)(C)(i), (b)(1)(G).  Capital gain property is defined in the code as "any capital asset the sale of which at its fair market value at the time of the contribution" would generate long-term capital gain for the donor.  IRC § 170(b)(1)(C)(iv).  As explained above, a "capital asset" is defined in IRC section 1221(a) as "property held by the taxpayer."

Nevertheless, that 30 percent limitation does not apply where a donor elects to limit the charitable contribution to the amount of the donor's basis in the contributed property.[4]  IRC §§ 170(b)(1)(C)(iii), (e)(1)(B).  In other words, if a proper election is made, the taxpayer is entitled to the larger 50 percent limitation (*i.e.*, 50 percent of the taxpayer's "contribution base," which, as explained above, is defined in IRC section 170(b)(1)(G) as the taxpayer's adjusted gross income).  Such an election must be "made at such time and in such manner as the Secretary prescribes by regulations."  IRC § 170(b)(1)(C)(iii).  The pertinent treasury regulation is 26 CFR 1.170A-8(d)(2)(iii), which states that "[t]he election * * * shall be made by attaching to the

///

---

[4] A similar reduction of contribution in lieu of the 30 percent limitation applies where the charity meets a statutory definition of a "private foundation."  *See* IRC 170(b)(1)(C)(i), (e)(1)(B)(ii).  In the present case there has been no allegation that the charity is such a private foundation.

income tax return for the election year a statement indicating that the election under section 170(b)(1)(D)(iii) and this subparagraph is being made."

In the present case, the house given by Plaintiff was capital gain property under IRC § 170(b). The fair market value of the donated portion exceeded his basis in it, so he would have realized a gain if he had sold it. Because the donated property was a capital asset under IRC section 1221(a), the gain from the sale would be a long-term capital gain under IRC section 1221(3). Therefore, Plaintiff is subject to the 30 percent deduction limit unless he elected to reduce his contribution at the time and in the manner prescribed by the treasury regulations. *See* IRC § 170(b)(1)(C).

Plaintiff does not allege that he attached to his income tax return the prescribed statement of his election to reduce his contribution, nor has he provided any evidence on that point. *Cf.* 26 CFR 1.170A-8(d)(2)(iii). There is therefore no basis in the record to conclude that Plaintiff made such an election.

Plaintiff makes no argument and cites no legal authority for his position, which is that IRC sections 170(b) and 170(e)(i) "do not apply" to limit a charitable deduction "where, by reason of the transfer of the contributed property, ordinary income or capital gain is recognized by the donor in the same taxable year in which the contribution is made, thus an election need not be made." (Ptf's Resp at 1.) A bare assertion by a party that a statute does not apply to him is insufficient ground to set that statute aside.

Accordingly, looking at the record in the light most favorable to Plaintiff, Plaintiff is subject to the 30 percent limit on charitable deductions under IRC section 170(b)(1)(C)(i). Defendant is therefore entitled to prevail under the statutes.

/ / /

III.  CONCLUSION

Having examined the pleadings and documentary evidence, the court finds that there is no genuine issue of material fact and that Defendant is entitled to prevail as a matter of law. Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant's cross-motion for summary judgment is granted.

IT IS FURTHER DECIDED that Plaintiff's motion for summary judgment is denied.

Dated this ____ day of March 2014.


_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on March 17, 2014.  The court filed and entered this document on March 17, 2014.*